### Ruby Parker Bailey v. Pioneer Federal Savings and Loan Association, Et Al.

March 9, 1970.

Record No. 7030.

Present, All the Justices.

*Harold Freeman; Emanuel Emroch (Emroch, Cowan & Emroch,* on brief), for appellant.

*F. L. Wyche; Kenneth R. Klaffky (Torsten E. Peterson,* on brief), for appellees.

I'Anson, J., delivered the opinion of the court.

On December 11, 1963, plaintiff, Ruby Parker Bailey, an infant, suing by her next friend, filed a bill of complaint in the court below against Cleveland Parker, Bernice Parker DeLane,[1] and Bernard Parker,

---

1. Also shown in the record as Bernice Parker *Delane.*

Jr., infants under the age of 21, and Herman Parker, all brothers and sisters of the plaintiff, alleging, so far as is material here, that Herman Parker had wrongfully collected rents on eight apartment buildings containing sixteen rental units in Hopewell, Virginia, of which her father, Bernard Parker, died seised and possessed, and praying that he be required to file an accounting of the rents collected. Herman Parker denied the allegations and asserted that Pioneer Federal Savings and Loan Association of Hopewell, Virginia, had wrongfully taken possession of the apartments and collected the rents.

Plaintiff then filed an amended bill alleging that on June 2, 1953, Bernard Parker and Rosetta Parker, his wife, executed a deed of trust conveying the apartment property to F. W. Colona and T. E. Barnett, trustees, to secure the payment of a $9,000 note payable to First Federal Savings and Loan Association, now Pioneer Federal Savings and Loan Association (Pioneer); that Colona, Barnett and Pioneer had wrongfully taken possession of the property, collected the rents, and further had committed waste and mismanaged it. She prayed that Colona, Barnett and Pioneer be required to render an accounting of the rents collected, and that damages be awarded to her and the other Parker heirs for waste and mismanagement of the property.

Colona, Pioneer and First and Merchants National Bank, administrator of the estate of T. E. Barnett, deceased, filed their joint answer denying that they had wrongfully taken possession of the property and collected the rents, and that they had committed waste and mismanaged the property. They also asserted that on July 1, 1955, payments on the note were in serious default and, acting under the authority granted by provisions of the deed of trust, trustee Barnett had taken possession of the property and collected the rents; that Barnett had properly accounted for the rents collected; that the loan was in default prior to October 9, 1962, when the property was sold at public auction by trustee Colona; and that Pioneer purchased the property at the foreclosure sale for the sum of $2,500.

Subsequently the plaintiff filed a petition, which was treated as an amended bill of complaint, alleging that the loan was not in default when Pioneer caused the property to be sold at public auction; that the notice of sale did not comply with the provisions of the deed of trust; that the sale of the property to Pioneer was null and void; and that Pioneer's subsequent conveyance of the property to J. W. Harlan and H. A. Butterworth was void.

Harlan and Butterworth filed their answers asserting that they were

bona fide purchasers for value of the property, and asking the court to remove the cloud from their title.

The cause was referred to a commissioner in chancery who heard the evidence *ore tenus* and filed his report, which stated his findings as follows: That the loan was in default on July 1, 1955; that under the provisions of the deed of trust trustee Barnett had the right to take possession of the property and collect the rents; that Barnett made a full accounting of the receipts and disbursements; that the expenditures for maintenance and repairs were in keeping with the rent revenues and with good business practices; that he had acted in good faith and prevented waste as far as he could; that at the time of the foreclosure sale the note was in default; that the notices of the sale of the property were in substantial compliance with the requirements of the deed of trust; that Pioneer received a good title to the property from trustee Colona through the foreclosure sale; that Harlan and Butterworth received a good title from Pioneer; and that plaintiff and the other Parker heirs had no interest in the property.

Plaintiff filed exceptions to the Commissioner's report. The trial court, in a written opinion, overruled the exceptions and entered its decree confirming the report. We granted plaintiff an appeal.

The evidence before the Commissioner is as follows:

On June 2, 1953, Bernard Parker and Rosetta Parker, his wife, conveyed the apartment property to F. W. Colona and T. E. Barnett, trustees, to secure to First Federal Savings and Loan Association, now Pioneer, the payment of a note in the amount of $9,000, with interest thereon at the rate of 6% per annum, payable in monthly installments of $87.83 until the indebtedness was completely paid, and also $10.17 for *estimated* taxes and insurance each month, totalling $98.00.

The deed of trust provided that it was to be construed in conformity with all provisions of §§ 55-59 and 55-60, Code of 1950, and that:

> "In addition to the remedies provided for above, the trustee, in the event of default hereunder, shall have the right to take immediate possession of the said premises, and until a sale is made hereunder, to rent out the same to such persons and at such rentals as they may deem proper; to make such expenditures for maintenance and repairs as they may deem advisable, and after deducting the cost thereof and a commission of five percent (5%) to themselves upon the gross amounts of the rents collected, then to

apply the residue to the fulfillment of the obligations of the parties of the first part on the herein-described note."

During the year 1954, Bernard Parker and Rosetta Parker, his wife, died intestate, leaving five surviving children, four of whom were infants. The adult son, Herman Parker, qualified as administrator of his father's estate and assumed management of the apartment property until his incarceration at the State farm.

On July 1, 1955, the loan was six months in default, and, at the request of Pioneer, trustee Barnett, who was also president of Pioneer, took over the management of the property and collected the rents. By September 16, 1955, Barnett, through his agents, had collected a sufficient amount from rents to bring the loan payments up to date, and he continued to collect the rents until the tenants vacated the premises sometime after January of 1962, when the city condemned the apartment buildings as uninhabitable. Out of the rents received, expenditures were made for maintenance and repairs and the water bills and the monthly installments on the loan were paid. Taxes and insurance premiums increased, and the monthly payments to Pioneer were increased accordingly.

A detailed accounting kept by an employee of Pioneer, acting as agent for Barnett, shows that from July 1, 1955, through January 20, 1962, Barnett collected rents totaling $21,407.75. During this period $5,389.11 was spent for repairs and $3,212.76 for water. The buildings were poorly constructed and were subject to rapid depreciation. Of the total rents due, only $1,581 was uncollectible. From the type of the property and class of tenants involved, the uncollected rent was far below average.

When the property was sold at public auction by trustee Colona on October 9, 1962, the monthly payments on the note were delinquent in the amount of $364.70, and the total balance due on the loan was $2,712.01.

When Colona first advertised the property for sale in The Hopewell News, the notice omitted the name of the city where the sale was to be held. This omission was discovered after the first insertion in the newspaper, and the next three notices showed the place of sale to be in the City of Hopewell. The notice of sale also provided that a deposit of $200 might be required of the successful bidder, and it did not state the names of the grantors in the deed of trust.

The controlling questions presented on this appeal are (1) whether trustee Barnett wrongfully took possession of the property and col-

lected the rents, failed to make a full accounting of the receipts and disbursements, and committed waste; (2) whether the loan was in default when the property was sold at public auction; (3) whether the notice of the foreclosure sale complied with the requirements of the deed of trust; and (4) whether the deed of conveyance from Pioneer to Harlan and Butterworth is void.

The report of a commissioner in chancery, who hears the evidence *ore tenus*, is entitled to great weight and should not be disturbed unless its conclusions are unsupported by the evidence. The decree of a trial court confirming the report is presumed to be correct and will not be reversed unless plainly wrong. *Seaboard Bank* v. *Revere*, 209 Va. 684, 688, 166 S.E.2d 258, 261 (1969); *Pavlock* v. *Gallop*, 207 Va. 989, 994, 154 S.E.2d 153, 157 (1967).

Here the Commissioner's findings, confirmed by the trial court, are supported by the evidence. The provision under which Barnett took possession and collected the rents is often incorporated in terms of deeds of trust and mortgages. See *Santacroce Bros.* v. *Edgewater-Santa Clara, Inc.*, 51 Cal. Rptr. 613, 615, 242 Cal. App. 2d 584, 587 (1966); Annot., 91 A.L.R. 1217-29. The obvious intent of such a provision is to put the trustee in the shoes of the grantors and permit him to use the rents for all necessary expenses and to make payments on the obligation according to the tenor of the instrument. The collection of the rents is not merely an incident to the right of possession of the property, but is a distinct remedy and an additional security amounting to an assignment of the rents.

The records filed as an exhibit on behalf of trustee Barnett show that the property, while in his possession, was managed and maintained in accordance with good business practices and a complete and proper accounting of receipts and disbursements was made.

At the time the property was sold at public auction, the record shows that the loan payments were in default.

Plaintiff says that because the notice of sale did not comply with the requirements of the deed of trust, Pioneer did not obtain a valid title from trustee Colona. Thus she concludes that since Pioneer did not obtain a valid title to the property, its deed of conveyance to Harlan and Butterworth is void.

Substantial compliance with the requirements for advertisements set forth in a deed of trust is sufficient so long as the rights of the parties are not affected in a material way. *Tabet* v. *Goodman*, 136 Va. 526, 118 S.E. 230 (1923); *Dickerson* v. *McNulty*, 142 Va.

559, 129 S.E. 242 (1925). See also 59 C.J.S., Mortgages, § 567, p. 952.

Although the first insertion of the notice of sale in The Hopewell News omitted the place of the sale, the next three insertions carried it. From other language in the first advertisement one could not have been misled as to the place of sale. There was substantial compliance with the requirement under the deed of trust and the omission in the first advertisement did not invalidate the notice and sale thereunder.

The names of the grantors in the deed of trust were omitted from the advertisement, but there is no statutory requirement that their names be carried in the notice of sale. Code § 55-62 merely prescribes a permissible form of notice.

The notice of sale provided that the trustee might require a bidder's deposit of $200 before a bid was received. At the time the trust deed was executed Code § 55-59(10) limited the amount of the successful bidder's deposit to $100. Here no deposit was required, and there is no evidence that the statement in the advertisement depressed the bidding or that the rights of the Parker heirs were affected in any material way.

Plaintiff also contends, for the first time on this appeal, that the foreclosure sale was void because the trustee did not comply with §§ 8-674 to 8-685, Code of 1950, 1957 Repl. Vol., dealing with the lease, sale and mortgage of infants' lands. No authority is cited in support of the contention.

It is perfectly obvious that the contention is without merit, and we do not deem it necessary to discuss it.

For the reasons stated, the decree of the court below is

*Affirmed.*