CARL H. SEEMANN

V.

CAROLYN SEEMANN

Record No. 841029

April 24, 1987

Present: Carrico, C.J., Cochran,* Poff, Compton, Stephenson, Russell, and Thomas, JJ.

---

* Justice Cochran participated in the hearing and decision of this case prior to the effective date of his retirement on April 20, 1987.

*Betty A. Thompson* for appellant.
*Richard C. Shadyac (Richard C. Shadyac, Jr.,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

The questions presented in this appeal are whether the evidence supports the trial court's findings that (1) a wife was not guilty of adultery, and (2) the wife was justified in leaving the marital home and therefore not guilty of deserting her husband.

This cause originated with a bill of complaint filed by Carolyn Seemann seeking a divorce from Carl Seemann on the grounds of cruelty and constructive desertion. In his answer, Carl denied that he was guilty on either ground. By a cross-bill, Carl sought a divorce on the ground that Carolyn deserted him. Subsequently, Carolyn filed an amended bill of complaint, praying for a divorce on the alternative ground that the parties had lived separate and apart without any resumption of cohabitation for a period of one year.

The cause was referred to a commissioner in chancery who, after hearing the evidence, reported that neither party had proved a fault ground for divorce. The commissioner recommended, however, that Carolyn be granted a divorce on the ground of the parties' one-year separation. Carl filed exceptions to the commissioner's report.

The trial court advised counsel that the exceptions would be overruled and the commissioner's report would be confirmed. Before the court entered a decree implementing its rulings, how-

ever, Carl filed a supplemental cross-bill alleging adultery. Carolyn denied the allegation, and the cause was referred again to the commissioner. After hearing further evidence, the commissioner recommended that Carl be denied a divorce on the ground of adultery. Carl also filed exceptions to the second report. By decree entered April 16, 1984, the court overruled Carl's exceptions to both reports and granted Carolyn a divorce on the ground of one year's separation.

Following the parties' separation in July 1981, Carolyn, an active member of the Jehovah's Witnesses, became acquainted with John Gendron, a Lieutenant Colonel in the United States Army. Carolyn and Gendron began "dating" on a regular basis in early 1983.

In August 1983 Carolyn and Gendron went to Texas, accompanied by Gendron's children. The children remained in Texas, and Carolyn and Gendron returned to Virginia by automobile. On their return trip, the couple made four overnight stops at hotels. Each night they occupied the same bedroom. They returned to Alexandria on August 12 and went to Gendron's apartment, where they spent the weekend.

On the evening of August 12, a private detective employed by Carl saw Carolyn and Gendron enter the apartment. The detective testified that she placed her ear against the apartment door and heard Gendron say, "Uh, sex later." Gendron denied making the statement, adding, "[W]e were both so tired that there was no way."

Carolyn and Gendron spent another weekend together in Philadelphia. They also spent two nights in the same hotel room in Virginia Beach.

Carolyn testified that she had "strong feelings" for Gendron but denied that they ever engaged in sexual intercourse. While admitting that she and Gendron had slept in the same bedroom, she said that they never slept in the same bed. When she was asked why she had not had sexual intercourse with Gendron, Carolyn replied: "Because I don't believe in it. It's not God's way. God says no to it." When counsel suggested that her denial was "rather incredulous," Carolyn responded: "I understand that, I do. But that's why our relationship is so special. I realize it's extremely hard to believe in this day and time, but there are people out there that have principles today; Godly principles."

Gendron expressed his love for Carolyn, but he also denied that they had engaged in sexual intercourse. When he was asked why they had not had sexual intercourse, Gendron answered: "Because we just don't believe that that's the way it should be. That's why she's so special. That's why I spend the time I do with her." In a similar vein, he added: "She's that way. She has those beliefs, and that's what I find so special about her."

■ One who alleges adultery has the burden of proving it by clear and convincing evidence.[1] *Coe v. Coe*, 225 Va. 616, 622, 303 S.E.2d 923, 927 (1983); *Dooley v. Dooley*, 222 Va. 240, 245-46, 278 S.E.2d 865, 868 (1981); *Painter v. Painter*, 215 Va. 418, 420, 211 S.E.2d 37, 38 (1975); *Haskins v. Haskins*, 188 Va. 525, 530-31, 50 S.E.2d 437, 439 (1948). When proof of adultery is undertaken in a divorce case, "[t]he testimony of a hired detective . . . should be carefully scrutinized and acted on with great caution." *Colbert v. Colbert*, 162 Va. 393, 400, 174 S.E. 660, 662 (1934). *Accord Dooley*, 222 Va. at 246, 278 S.E.2d at 868.

■ Although a commissioner's report is not entitled to the weight given to a jury's verdict, the report's findings should be sustained by a trial court unless the court concludes that they are not supported by the evidence. *Hill v. Hill*, 227 Va. 569, 576-77, 318 S.E.2d 292, 296-97 (1984). This is especially the case when the commissioner's findings of fact are based upon evidence taken in his presence. *Id.*; *Hudson v. Clark*, 200 Va. 325, 329, 106 S.E.2d 133, 136 (1958). On appeal, a decree that has confirmed a commissioner's report is presumed to be correct, *McGrue, Executrix v. Brownfield*, 202 Va. 418, 427, 117 S.E.2d 701, 708 (1961), and will be affirmed unless plainly wrong, *Sprott v. Sprott*, 233 Va. 238, 240, 355 S.E.2d 881, 882 (1987) (this day decided); *Hill*, 227 Va. at 577, 318 S.E.2d at 296-97; *Bailey v. Pioneer Savings and Loan*, 210 Va. 558, 562, 172 S.E.2d 730, 734 (1970).

Carl contends that Carolyn's evidence is incredible and adultery was proved as a matter of law. He asserts that the trial court abandoned its duty in failing to make an independent evaluation

---

[1] We have defined "clear and convincing evidence" as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*." *Walker Agcy. & Aetna Cas. Co. v. Lucas*, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (emphasis in original).

of the evidence and simply "rubber stamped" the commissioner's report. We reject these contentions.

In the present case, the commissioner heard and observed the witnesses and, in spite of the highly suspicious circumstances, chose to believe Carolyn and Gendron. Moreover, the record shows that the trial court carefully reviewed and considered the evidence, according due deference to the commissioner's report. In reaching its conclusion, the court said:

> I have been involved in this case almost two years . . . [a]nd one of [its] aspects . . . had to do with the religious connotations that Mrs. Seemann gives to things . . . .
>
> I would have to agree . . . that in the ordinary course of events this is close to being inherently incredible. I think that probably in most circumstances the evidence is adequate to prove adultery. However, the deference [that] has to be given to a [commissioner] who had an opportunity to view the witnesses, and to determine . . . how much weight to give their testimony is quite important. Because what you have is basically a credibility issue. Private detectives have to be looked at with great caution. . . .
>
> It is odd; it is unusual now. But I can't say that it strains the bounds of credibility to believe that [Carolyn and Gendron] have had this relationship and haven't had intercourse.

Clearly, there is evidence to support the findings of both the commissioner and the trial court. We cannot say, as Carl would have us, that Carolyn's evidence is incredible as a matter of law. Because the finding of the trial court is not plainly wrong, we will not disturb it.

Carl's second assignment of error reads as follows: "Where the court found fault on both sides, it was error to hold that the wife was 'free from fault' when she left her husband." Thus, Carl argues, because Carolyn left him without justification, she is guilty of desertion. To support this assignment of error, Carl focuses upon the trial court's statement that "[t]here was fault on both sides." We must, however, look to the court's complete statement:

> There was a long pattern of abusive behavior primarily verbal on the part of husband which [undermined] the stability of this marriage. This culminated in his striking his wife and her subsequent flight. There was fault on both sides in

this case, but neither rises to the level of legally proven fault. The wife left the home with justification as her flight was the result of this latest striking. And *Capps* and *Rowand* I believe control in that situation. There was little outside corroboration of the recent history of the marriage which led to its dissolution. As in *Capps*, this Court holds that the wife was free from legal fault when she left the husband because of the incident of his physical abuse when coupled with the other forms, other factors of her deteriorating mental health and Mr. Seemann's excessive demands and admitted verbal abuse on occasions.

For many years, we adhered strictly to the rule that "one spouse is not justified in leaving the other, unless the conduct of the other is sufficient to establish the foundation of judicial proceeding for a divorce." *Sprott*, 233 Va. at 241, 355 S.E.2d at 882 (quoting *Lawyer* v. *Lawyer*, 207 Va. 260, 264, 148 S.E.2d 816, 819 (1966)). More recently, however, we have relaxed the rule. *See Breschel* v. *Breschel*, 221 Va. 208, 212, 269 S.E.2d 363, 366 (1980) (wife who left because she reasonably believed continued cohabitation endangered her health was free from legal fault); *Capps* v. *Capps*, 216 Va. 382, 385, 219 S.E.2d 898, 900 (1975) (wife was free from legal fault who left the marital home because of single act of physical abuse, not amounting to husband's cruelty sufficient to be a ground of divorce); *Rowand* v. *Rowand*, 215 Va. 344, 346, 210 S.E.2d 149, 151 (1974) (wife who left when told by husband to "get out" was free from legal fault). A spouse is not justified in leaving the other, however, "merely because there has been a gradual breakdown in the marital relationship." *Sprott*, 233 Va. at 242, 355 S.E.2d at 883.

In the present case, the evidence shows that throughout the marriage Carl displayed a bad disposition. On occasions, he became so ill-tempered that he resorted to violent acts. Once Carl threw a plate at Carolyn; another time he pointed a knife at her and threatened to put it "right through" her. On several occasions he spat upon Carolyn and deliberately stepped on her toes. On another occasion when Carolyn was reading Bible stories to her daughter, Carl grabbed Carolyn, told her to "get the hell out of here," pushed her out of the house, and locked the door.

During the two years preceding the separation, Carolyn became fearful for her physical safety. She became so emotional that she sought psychological assistance.

Carl's final violent act occurred on July 26, 1981. When Carolyn returned home from a meeting of the Jehovah's Witnesses, she asked Carl to look at some literature she had obtained at the meeting. Carl took the literature and tore it up. Carl then grabbed Carolyn, threw her against a sideboard, and knocked her onto a sofa. Thereupon, he turned her over and spanked her "very hard" on her buttocks. Carolyn left the house, never to return, and went to the hospital for medical assistance for the injuries she received.

We conclude that sufficient evidence exists to support the trial court's finding that Carolyn was justified in leaving Carl on July 26, 1981. Even if Carl's conduct did not amount to cruelty, the trial court properly could conclude that his conduct was the "provoking cause" for her leaving the home. *See Capps*, 216 Va. at 385, 219 S.E.2d at 900. Thus, we hold that the present case falls within the ambit of *Rowand*, *Capps*, and *Breschel*.

For the reasons stated, the decree of the trial court will be affirmed.

*Affirmed.*