COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Clements and Senior Judge Hodges
Argued at Richmond, Virginia


NATHAN D. ZASLER

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0564-02-2        JUDGE JAMES W. BENTON, JR.
                                         SEPTEMBER 9, 2003
CAROL P. ZASLER


              FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      George F. Tidey, Judge

          Terrence R. Batzli (Ann Brakke Campfield;
          Barnes & Batzli, P.C., on briefs), for
          appellant.

          Susanne L. Shilling (Shilling & Associates,
          on brief), for appellee.


     Nathan D. Zasler appeals from a domestic relations final

decree and contests awards to his wife, Carol P. Zasler, of

marital property, spousal support, and fees for her expert witness

and her attorney.  For the reasons that follow, we affirm the

decree.

                         I.  Background

     The husband and the wife married in 1993 and separated in

2000.  Shortly after their separation, the husband commenced this

divorce action, alleging adultery, cruelty, and constructive

desertion.  The wife filed an answer and a cross-bill denying

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

adultery and alleging the husband assaulted her and threatened the mental health of their family. The trial judge determined that neither party was entitled to a divorce based on fault grounds, but he ruled that they could argue those issues as having a bearing on the distribution of the property. On February 12, 2001, the trial judge entered a decree a divorce on the ground that the parties had lived separate and apart for a period in excess of one year.

At the conclusion of numerous hearings concerning the remaining issues, the trial judge entered a final order on February 7, 2002 that granted custody of the children to the wife, provided visitation rights to the husband, and ordered the husband to pay $2,665 per month child support. In addition and germane to this appeal, the final order valued Concussion Care Centre of Virginia, Ltd. at $560,000 and granted the wife 40% of its value, valued Tree of Life Services, Inc. at $190,000 and granted the wife 40% of its value, valued Tree of Life, LLC at $450,000 and granted the wife 40% of its value, ordered the jointly owned farm to be sold and divided the proceeds equally between the parties, distributed the remaining marital assets equally, apportioned the parties' tax liability based on their respective taxable incomes, apportioned marital debts such that husband bore responsibility for 60% of the debt, ordered the husband to pay the wife $466,939.74 for her share of the marital property based on the above distribution, ordered the husband to

- 2 -

pay $4,000 per month for spousal support, and ordered the husband to pay $45,000 for the wife's attorney's fees and $10,000 for her expert witnesses' fees. The husband appeals various aspects of this final decree.

## II. Standard of Review

On appeal, we review the evidence in the light most favorable to the party prevailing below and grant all reasonable inferences fairly deducible from that evidence. Rogers v. Yourshaw, 18 Va. App. 816, 818, 448 S.E.2d 884, 885 (1994). Moreover, we give great weight to the factual findings of the trial judge when those findings are "based upon the judge's evaluation of the testimony of witnesses heard ore tenus." Gottlieb v. Gottlieb, 19 Va. App. 77, 83, 448 S.E.2d 666, 670 (1994). We will not overturn a final decree if the judge's findings are "supported by substantial, competent, and credible evidence." Id.

## III. Valuation

Code § 20-107.3(A) provides that the trial judge, "upon request of either party, shall determine the . . . value of all property, real or personal, tangible or intangible, of the parties." Although a trial judge may not arbitrarily reject credible evidence of value, Bowers v. Bowers, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987), we have recognized in Zipf v. Zipf, 8 Va. App. 387, 395, 382 S.E.2d 263, 268 (1989), that a

- 3 -

trial judge may select a value within a range of conflicting opinions.

A.  Concussion Care Centre of Virginia, Ltd.

The husband contends the trial judge erred in determining the value of Concussion Care Centre of Virginia, Ltd.  He argues that the trial judge should have relied on the valuation of his expert rather then the wife's expert.  He further argues that even if it was not an error for the trial judge to rely on the wife's expert's valuation, the trial judge's adjustments to that value were error.  Lastly, he argues that the trial judge's determination of personal goodwill for the husband in valuing the corporation was inadequate.

The husband, a physician, started Concussion Care in 1994 to provide consulting services, clinical care, and physical therapy/psychological treatment primarily related to brain injuries.  Although each party produced an expert to establish the value of Concussion Care, the experts gave extensive deposition testimonies with "divergent valuations."  The record contains each expert's valuation report with documentation.

William R. Dacey, the wife's expert, testified that his "approach [was] to determine an estimate of value of [the husband's] common stock interests, which would provide a fair and reasonable return on investments to an investor or owner, in view of the facts available . . . as of the valuation date."  Dacey's "opinion is based on, among other things, [his] estimate

- 4 -

of the risks facing [the husband's practices] and the return on investment that would be required on alternative investments with similar levels of risk."

After describing various methods of valuation, Dacey testified that the value of Concussion Care should be determined by the capitalization of historical income method. Applying this method of valuation, he opined that the value for Concussion Care as of December 31, 2000, exclusive of a premium or discount for control or marketability, was $790,585. Because the husband's 2000 income tax return indicates he did not pay himself a salary from Concussion Care, Dacey adduced the income by determining the cost to replace the husband "with a physiatrist who was earning the median compensation in the eastern geographic region of the United States for a physiatrist as reported in . . . [a] Physician Compensation Book." Concluding that the median compensation for a physician who could replace the husband was $143,736, Dacey "divided that salary between Concussion Care and Tree of Life Services, Inc., [a related entity the husband operated,] in accordance with their gross revenues." Consequently, from Concussion Care's income of $227,143, Dacey subtracted $56,057 as salary for the husband. Dacey then added $3,255 of personal expenses from the husband's corporate credit cards. Dacey testified his valuation used commercial goodwill but did not take into account personal goodwill because of the husband's questionable personal life and

because the husband is not rated by his peers as one of the best of his speciality in this geographic area.

The husband's expert, William D. Stephens, used the net asset value method to determine the value of Concussion Care. Stephens explained he did not use the income value method because, even though the husband received money in the form of shareholder loans, the husband did not pay himself salaries in 1999 and 2000. Stephens further opined that, due to the consulting component of the business, it would be difficult to replace the husband with another physician. Therefore, he decided the value of the company must take into account the husband's salary, not a replacing physician's. In deciding the value of the husband's unpaid salary, Stephens relied on an analysis of the husband's income potential generated by a placement agency to support his conclusion that the husband should have been paid $250,000 for the year 2000. Stephens concluded that the fair value of the business as of December 31, 2000 was $471,100. After subtracting personal goodwill, which he deemed to be the husband's separate property, Stephens estimated the total marital value in the business to be $291,129.

The valuation issue in this case involved a classic battle of experts. In his July 31, 2001 letter opinion, the trial judge noted the "great disparity" in the valuations and the difficulty this disparity caused in making an equitable

distribution. The trial judge explained, however, the method by which he arrived at the $560,000 valuation. From Dacey's valuation of $790,585, the trial judge deducted $130,000 for personal goodwill. He also added $100,000 to the salary figure Dacey used. In short, the trial judge accepted Dacey's valuation as more persuasive, but made two adjustments to it based on his view of the evidence.

The record establishes that the trial judge considered the deposition testimony of the two experts and thoroughly evaluated those experts' opinions. "We defer to the trial [judge]'s evaluation of the credibility of the witnesses." Shackelford v. Shackelford, 39 Va. App. 201, 208, 571 S.E.2d 917, 920 (2002) (citing Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 795 (1997)). He was not required to reject Dacey's valuation merely because the husband believed his expert's "evidence might be more accurate, convincing, desirable, or persuasive." Bowers, 4 Va. App. at 618, 359 S.E.2d at 551. In addition, the trial judge was not prohibited from making adjustments to the expert's valuation in order to select a value within a range of conflicting opinions. See Zipf, 8 Va. App. at 395, 382 S.E.2d at 268. In view of the evidence before the trial judge, we cannot say the adjustments the trial judge made were arbitrary. Therefore, we hold that the trial judge's findings are supported by credible evidence and that the judge did not err by making adjustments to a valuation he found more persuasive.

- 7 -

B.  Tree of Life, LLC

For similar reasons, we reject the husband's contention that the trial judge erred in valuing the Tree of Life, LLC, which the husband started in 1997.  Tree of Life, LLC owns real estate and a building and has no employees.  Its property is leased to Tree of Life Services, Inc. which is a related entity that provides transitional rehabilitation services as well as long-term living assistance services to people with brain injury.

Dacey applied the asset value method to determine the value of Tree of Life, LLC, and he opined that its value was $558,669. Because the husband's father owns 1% of this entity, Dacey valued the marital portion at $553,082.  Dacey explained he "based the value upon an adjustment to the book value for the building and improvements and the land, and [he] relied upon an appraisal by . . . an independent third party, showing the value of the land and the buildings to be $1,200,000."

Stephens likewise used the asset value method to determine the value of Tree of Life, LLC.  Relying on a different appraisal, Stephens determined that the value was $859,663. Subtracting $834,290 for liabilities, which included unpaid salary to the husband and money the husband received as shareholder loans, Stephens concluded that the fair value of husband's 99% interest in Tree of Life, LLC was $25,119.

- 8 -

The trial judge found Dacey's valuation method more persuasive but reduced the value to $450,000 because of evidence concerning a "change in acreage in the land."  We defer to the trial judge's evaluation of the two expert valuations.  See Shackelford, 39 Va. App. at 208, 571 S.E.2d at 920.  The evidence does not support a conclusion that the trial judge erred by accepting Dacey's opinion or in adjusting Dacey's valuation.

## IV.  Dissipation of Marital Assets

The husband contends the trial judge erred in failing to find that the wife had dissipated marital assets and that she wrongfully sold the husband's separate property.  The trial judge made no specific rulings on the issues.  The evidence, however, does not prove the occurrence of dissipation or that the wife sold husband's separate property.

We have held that "[d]issipation occurs 'where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.'"  Clements v. Clements, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990).  As we noted in Clements, "a majority of courts have held that the use of funds for living expenses while the parties are separated does not constitute dissipation."  Id. at 587, 397 S.E.2d at 261.

Evidence proved that between the date of separation and the first support hearing in May 2000, the wife sold a number of

items to support herself and the children because she was not receiving support from the husband. The wife sold her "engagement ring and quite a bit of jewelry," her wedding ring, a Japanese block art, five horses, and a horse trailer. The wife borrowed $55,000 from her insurance policy and allowed timbering on her farm land in exchange for $3,500. The wife produced a ledger to show that most proceeds from the sales were spent on ordinary household expenses.

Although the husband testified about expenses he paid, the record contains no contrary evidence to disprove that the wife used these funds for support. Viewed in the light most favorable to the wife, who prevailed at trial, the evidence tended to prove the funds were used for living expenses and does not prove the wife sold marital property for her "own benefit and for a purpose unrelated to the marriage." Clements, 10 Va. App. at 586, 397 S.E.2d at 261.

The final order does not specifically address whether the wife sold husband's separate property; however, the final order distributed the marital property as if the allegation of selling separate property was found untrue. Although evidence proved the "Japanese woodblock prints" were purchased prior to the couple's date of marriage, viewed in the light most favorable to the wife, no evidence proved the property belonged solely to the husband. The person who sold the prints testified that both husband and wife were present when the item was purchased.

V.  Valuation Date

The husband contends the trial judge used an improper date to value the properties.  He argues the trial judge erred by not accepting December 31, 1999, a date that is close to the separation date, as an alternative valuation date.

In pertinent part, Code § 20-107.3(A) provides as follows:

> The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue. Upon motion of either party made no less then twenty-one days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.

(Emphasis added).

December 31, 2000, the date the trial judge accepted as the valuation date, was closer to the evidentiary hearing dates, which were June 22, 2001, July 30, 2001, and November 5, 2001. Because the record fails to establish as a matter of law a good cause to order a different valuation date, we hold the trial judge properly followed the statute and did not err in choosing a date that is closer to the date of the hearing.

Although "[o]ne recognized justification for altering the evaluation date is a showing of dissipation of marital assets," Smith v. Smith, 18 Va. App. 427, 430, 444 S.E.2d 269, 272 (1994), we have already noted that the evidence failed to prove the wife dissipated marital assets.  Hence, the trial judge did not err in selecting a date closer to the evidentiary hearings

- 11 -

as the appropriate time to determine value of the businesses.
See Kaufman v. Kaufman, 7 Va. App. 488, 499, 375 S.E.2d 374, 380 (1988).

VI.  Inclusion of Shareholder Loans as Marital Debt

During the marriage, both husband and wife attempted to "maximize cash flow" by taking shareholder loans from their corporations in lieu of drawing salary.  The husband contends the trial judge erred in failing to consider certain shareholder loans as marital debt when he included them as assets in valuating the corporations.  He argues the trial judge should have "either included [the loans] as both corporate assets and corresponding personal debts or excluded [the loans] as both corporate assets and personal debts."

At a hearing, the husband's attorney argued the wife should be responsible for repaying 40% of the shareholder loans because those loans were included in the valuations of the corporations, of which she received a 40% interest.  The wife's attorney argued that by awarding the wife only 40% of the value of the companies, the trial judge did take into account the shareholder loans.  After hearing the arguments, the judge ruled: "the equitable distribution of the property is made extremely difficult because of the divergent valuations and the lack of cooperation by anyone in narrowing the issues.  As a result I made my decision based on what I thought the property interest

of each party was." In addition, the trial judge ruled: "I accept the [wife]'s solution with regard to the debt."

The judge clearly stated he based his decision on what he found to be the property interest of each party. By "accepting the [wife]'s solution with regard to the debt," we conclude the trial judge awarded the wife only 40% rather than a larger share of the companies as a means of considering her share of the debt. We find no error.

## VII. Spousal Support

### A. Adultery

"One who alleges adultery has the burden of proving it by clear and convincing evidence." Seemann v. Seemann, 233 Va. 290, 293, 355 S.E.2d 884, 886 (1987) (citation omitted). Although this evidence need not be unequivocal, it must be such that "'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" Id. at 293 n.1, 355 S.E.2d at 886 n.1 (citation omitted). Thus, the Supreme Court has held that "[s]trongly suspicious circumstances are inadequate" and that "[c]are and circumspection should accompany consideration of the evidence." Painter v. Painter, 215 Va. 418, 420, 211 S.E.2d 37, 38 (1975) (citation omitted). "While a court's judgment cannot be based upon speculation, conjecture, surmise, or suspicion, adultery does not have to be proven beyond all doubt." Coe v. Coe, 225 Va. 616, 622, 303 S.E.2d 923, 927 (1983). The husband contends

the wife should not be awarded spousal support because the evidence was sufficient to prove she committed adultery.

The deposition testimony established that the wife had an adulterous relationship in 1996 before she and the husband moved to Virginia.  The husband agreed to condone the wife's adultery based on several conditions, including the wife's promise to be faithful.  The wife admitted that since her adultery in 1996, she engaged in kissing incidents with a deputy sheriff and on some days paged him twenty times per day.  Although the wife denied a romantic interest in the deputy sheriff and described their relationship as "very good friends," she admitted that she and the deputy sheriff had multiple "heavy duty make-out sessions" in which they "fondled and made out."  The evidence further proved the wife urged the deputy sheriff to leave the state "before you can be deposed."  In that same letter, she implored, "[i]f you ever cared for me at all, especially when you were in bed with me and promising to love me forever no matter what."

The deputy sheriff confirmed those events and added that the wife hired him at her farm and gave him gifts from time to time.  He testified, however, that he and the wife engaged in sexual intercourse prior to the date she separated from the husband and that the wife had informed him of her previous adulterous affair.

The trial judge ruled that there was "not . . . sufficient evidence of an adulterous affair which would revive the adultery committed by [the wife] in 1995-96 and later condoned by [the husband]." He also ruled that "[w]hat ever occurred at the farm [with the deputy sheriff] did not lead to the breakup of the marriage." Notwithstanding the weighty burden of proof to establish adultery, the trial judge's holding is contrary to the deposition evidence. The evidence proved the relationship between the wife and the deputy sheriff was more than "strongly suspicious" and is capable of leading the most "guarded" reasonable person to the conclusion of adultery. Haskins v. Haskins, 188 Va. 525, 531, 50 S.E.2d 437, 439 (1948).

B. Manifest Injustice and Imputation of Income

Although we agree with the husband that the trial judge erred in finding the evidence insufficient to prove adultery, the trial judge made an alternative finding that it would be "manifestly unjust" to deny the wife spousal support. He ruled that the wife's conduct did not lead to the breakup of the marriage and that "there is great disparity between the incomes of the parties which would make it grossly inequitable and manifestly unjust."

Code § 20-107.1(B) provides that "no permanent maintenance and support shall be awarded from a spouse if there exists in such spouse's favor a ground of divorce under the provisions of

- 15 -

subdivision (1) of § 20-91," which includes adultery.  But the statute's bar is subject to the following exception:

> However, the court may make such an award notwithstanding the existence of such ground if the court determines from clear and convincing evidence, that a denial of support and maintenance would constitute a manifest injustice, based upon the respective degrees of fault during the marriage and the relative economic circumstances of the parties.

Code § 20-10.1(B).  Thus, when a trial judge finds manifest injustice and awards support based on "respective degrees of fault during the marriage and the relative economic circumstances of the parties," we will uphold the award if the record supports the finding by clear and convincing evidence. Congdon v. Congdon, 40 Va. App. 255, 266, 578 S.E.2d 833, 838 (2003).

On the "respective degrees of fault" factor, evidence proved that both parties contributed to the breakup.  The trial judge's belief that both parties were at fault is evident in the judge's refusal to grant either party a divorce based on fault grounds.  Even though the trial judge did not enumerate the various aspects of fault attributed to the parties, the record is replete with evidence of these events.  The wife committed adultery; the husband used cocaine on numerous occasions during the marriage and induced the wife to join him.  The husband also was arrested for assaulting the wife with a knife during events that led to their separation.  It is obvious from the record

- 16 -

that the judge considered the respective degrees of fault when he ruled that "[w]hat ever occurred at the farm [between the wife and the deputy sheriff] did not lead to the breakup of the marriage."

Evidence likewise proved the trial judge weighed the relative economic circumstances of the parties when awarding spousal support. The trial judge determined the wife's maximum salary to be $48,000. The trial judge also considered the husband's economic circumstances and determined his annual income to be $300,000. Although the husband argues his annual income is lower then that figure, his income history reveals that he earned $258,963 in 1996, $300,177 in 1997, and $325,000 in 1998 and, thus, supports the trial judge's determination.

"'Where the record contains credible evidence in support of the finding made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court.'" Calvin v. Calvin, 31 Va. App. 181, 183, 522 S.E.2d 376, 377 (1999) (citation omitted). The record supports the trial judge's findings of clear and convincing evidence. We hold, therefore, that the trial judge did not err in finding, by clear and convincing evidence, that denying spousal support would constitute a manifest injustice based upon the respective degrees of fault attributable to the parties as well as their disparate financial circumstances.

The trial judge ordered the husband to pay the wife $4,000 per month as spousal support. "'Whether and how much spousal support will be awarded is a matter of discretion for the trial court.'" Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002) (quoting Barker v. Barker, 27 Va. App. 519, 527, 500 S.E.2d 240, 244 (1998)). The evidence proved the wife accepted employment as a nurse at an annual salary of $48,000. In view of the evidence concerning the operation of the various corporate entities the parties operated and the economic risk to which the wife may have been exposed if she operated her own business, the trial judge did not err in refusing to impute income to the wife. The record supports the view that in "look[ing] to current circumstances and what the circumstance will be 'within the immediate or reasonably foreseeable future,' not to what may happen in the future," Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675 (1990), the wife was earning at her maximum capability.

"'In fixing the amount of the spousal support award, . . . the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion. We will reverse the trial court only when its decision is plainly wrong or without evidence to support it.'" Moreno, 24 Va. App. at 194-95, 480 S.E.2d at 794 (quoting Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992)). We hold that the trial judge did

- 18 -

not abuse his broad discretion in determining support based upon the parties' income and the evidence in the record.

## VIII.  Tax Liability

"Under Code § 20-107.3(C), the trial court had the 'authority to apportion and order the payment of the debts of the parties.'"  Alphin v. Alphin, 15 Va. App. 395, 403, 424 S.E.2d 572, 577 (1992) (citation omitted).  "Absent an abuse of discretion, 'the trial judge's determination will not be reversed on appeal.'"  Howell v. Howell, 31 Va. App. 332, 350, 523 S.E.2d 514, 523 (2000) (citation omitted).

Among the enumerated factors that a trial judge may consider when apportioning marital debt are:  contributions of each party, monetary and nonmonetary, to the well-being of the family; contributions of each party, monetary and nonmonetary, in the acquisition and care and maintenance of such marital property; the circumstances and factors that contributed to the dissolution of the marriage; how and when specific items of such marital property were acquired; and such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.  Code § 20-107.3(E).  Many of these factors are applicable to this case.

To prevent an inequity, the trial judge considered the relevant factors of Code § 20-107.3(E) and apportioned the tax liability in direct proportion to the parties' taxable income

- 19 -

for the years involved.  The ruling was both logical and within the sound discretion of the trial judge.

### IX.  Attorney's and Expert's Fees

The husband contends the trial judge erred in granting wife's request for attorney's fees and expert's fees.  As we have consistently held, however, "[a]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion.  The key to a proper award of counsel fees is reasonableness under all the circumstances."  Brooks v. Brooks, 27 Va. App. 314, 319, 498 S.E.2d 461, 463-64 (1998) (citations omitted).  The record does not establish that the judge abused his discretion.  Therefore, we affirm his order granting attorney's and expert's fees to the wife.

### X.

For these reasons, we affirm the judgment.

Affirmed.