COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Felton and Senior Judge Annunziata*
Argued at Alexandria, Virginia


GIRARD C. MILLER

                                                        OPINION BY
v.        Record No. 1160-04-4              JUDGE ROSEMARIE ANNUNZIATA
                                                        JANUARY 11, 2005

LYNN E. COX, F/K/A
 LYNN E. MILLER


                FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        Alfred D. Swersky, Judge Designate

                Michael A. Ward for appellant.

                David D. Masterman (Jeffrey S. Thiebert; Masterman & Graham,
                P.C., on brief), for appellee.


        This appeal concerns the propriety of the trial court's August 28, 2002 decree of divorce[1]

equitably dividing the marital estate and ordering Girard Miller (husband) to pay Lynn Cox

(wife) $9,000 per month in spousal support.  The order of spousal support was raised in a prior

appeal, but we declined to address it, deciding, instead, to remand the issue to the trial court for

reconsideration in light of our reversal of certain portions of the equitable distribution award.

See Miller v. Miller, No. 2261-02-4, 2003 Va. App. LEXIS 401 (Va. Ct. App. July 15, 2003).

Husband renews his challenge to the 2002 spousal support award and the trial court's exercise of

_____

        * Judge Annunziata participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2004 and thereafter by her designation as a
senior judge pursuant to Code § 17.1-401.

        [1] The trial court found that husband deserted the marriage and granted a divorce on that
ground.

discretion in its reconsideration of that award on remand from this Court as reflected in an April 29, 2004 order. Finding that the trial court did not abuse its discretion, we affirm.

Husband raises four issues on appeal. He contends that the trial court erred in: 1) ascribing a 5% rate of return to wife's investments; 2) finding wife is entitled to a spousal support award and in the amount stated in light of her needs; 3) failing to limit the duration of the spousal support award; and 4) failing to consider changes to wife's income as a result of this Court's prior reversal of the equitable distribution award. In addition to husband's claims on appeal, wife seeks an award of attorney's fees to compensate her for the expense incurred in defending against those claims. We address each contention in turn.

The following legal principles are relevant to our analysis of all issues. As an appellate court, we view the evidence, and all reasonable inferences flowing from the evidence, in a light most favorable to wife as the party prevailing below. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). "That principle requires us to 'discard the evidence' of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)).

In reviewing a spousal support award, we are mindful that the trial court has broad discretion in awarding and fixing the amount of spousal support. Brooks v. Brooks, 27 Va. App. 314, 317, 498 S.E.2d 461, 463 (1998). Accordingly, our review is limited to determining whether the trial court clearly abused its discretion. Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992). In exercising its discretion, the trial court must consider all the factors enumerated in Code § 20-107.1(E) when fashioning its award, but it is not "required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986). That being

said, the trial court's findings "must have some foundation based on the evidence presented." Id. Where that evidentiary foundation exists and the record discloses that the trial court "has given due consideration to each of [the statutory] factors," we will not disturb its determination as to spousal support on appeal. See Thomasson v. Thomasson, 225 Va. 394, 398, 302 S.E.2d 63, 66 (1983); see also Gamble, 14 Va. App. at 574, 421 S.E.2d at 644.

### I. The Trial Court Did Not Err in Finding 5% To Be a Reasonable Rate of Return on Wife's Investments

Husband contends that the trial court erred in finding that wife could expect a 5% pretax return on the assets she received in equitable distribution. He argues that the evidence fails to support that determination. We find husband's contention to be wholly without merit.

Viewed in a light most favorable to wife, the evidence establishes that the trial court heard expert evidence on a range of possible rates of return. Wife's expert, David Twenhafel, testified that he would advise wife to diversify her assets by investing in money market funds, bonds, and stocks. He said she could expect a rate of return of 3.75% from money market funds, 6.75% from bonds, and 11.00% from stocks. Proceeding from the assumption that wife could invest approximately $1,364,000 in capital as a result of the equitable distribution award, Twenhafel said he would advise wife to invest 22% of the capital in money market funds, 31% in bonds, and 47% in stocks. According to Twenhafel, the assets so invested would produce approximately $110,000 per year before taxes or $77,000 after taxes. These figures represent an 8% return pretax and a 5.6% return after taxes. However, Twenhafel cautioned that his analysis "assumed rates of return for the next 10 years that are close to long-run historical averages—which means that there is about a 50% chance that my assumptions [regarding rate of return] are too high."

Husband's expert, Robert Anderson, testified that wife could expect a 7% return on her assets after taxes if she invested 60% in stocks and 40% in bonds. If wife invested all of her money in safer, tax-free bonds, she could expect a 4.5% return.

Based on the evidence presented to the trial court establishing the range of possible rates of return on wife's investments, we hold that it did not erroneously impute a 5% pretax return to the assets wife received in equitable distribution. Under settled legal principles, the trial court may accept or reject an expert's opinion in whole or in part. See Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668-69 (1997) (en banc); Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). Here, the trial court heard testimony from wife's expert that he would advise wife to diversify her assets by investing a small portion of her money in safer vehicles yielding lower returns, such as money market funds, and a larger portion of her money in riskier assets yielding higher returns, such as stocks. From Twenhafel's and Anderson's testimony, the trial court learned that, depending on the risk of the investment, wife's rate of return could average anywhere from 3.75% to 11.00% pretax. Although Twenhafel suggested that wife should invest 22% of her total assets in lower-yielding money market funds, the trial court was not required to accept Twenhafel's suggested allocation; rather, the trial court could act within its broad discretion to assign a lower risk profile to wife's investments than Twenhafel suggested. Furthermore, the trial court was not required to accept Twenhafel's testimony establishing higher rates of return, especially in light of Twenhafel's warning that there was a 50% chance his predictions were too high and in light of evidence that the parties had historically engaged in less aggressive investment practices during the marriage.[2] Based on the

_____

[2] Twehafel testified that, according to the Millers' tax returns, the couple's investment portfolio returned approximately $48,000 per year in tax-free interest, taxable interest, and dividend income. The couple's investment portfolio totaled over $3,000,000 during the marriage. Wife also testified that she and husband "saved very aggressively partly so that we wouldn't have to invest aggressively."

evidence before the trial court, we hold that the trial court did not err in determining that wife's investments could reasonably return 5% pretax.

## II.  The Trial Court Did Not Err in Awarding Spousal Support to Wife, Nor Did It Err in the Amount Awarded

Husband contends that the trial court erred in awarding $9,000 in spousal support to wife. Specifically, he argues wife's income from her employment and the assets she received in equitable distribution exceed her demonstrated need.  He reasons that an award of support that exceeds her proved needs is error as a matter of law.  We find his contention to be without merit and affirm the trial court's award of spousal support in the amount of $9,000 per month.

Viewed in a light most favorable to wife, the evidence establishes that she demonstrated yearly expenses in the amount of $125,000.[3]  This figure included, but was not limited to, necessary expenditures such as food, housing, and medical expenses.  The evidence also established that husband and wife lived frugally relative to husband's income during the marriage and that they did so in order to save for retirement.  Wife testified that saving for retirement "was a very big point of our lives . . . we were going to have a good retirement." Wife further stated that she and husband "tried to do the one-third/one-third/one-third rule, which is one-third of your money goes to taxes[,] . . . one-third goes to savings, and one-third goes to expenses—and we pretty much were on target or even better . . . most of the time."  Husband confirmed that, as a married couple, they invested a large portion of his yearly income:  "The practice of the household was that we essentially took all bonus income and invested it and systematically held money from the annual or monthly compensation. . . .  We were living on less than the combined salary income."  Husband's base salary income in 1999, 2000, and 2001 was approximately $395,000.  Husband also earned substantial bonuses in those years, which

_____

[3] Husband's expert proffered a similar number, figuring wife's expenses would total $10,000 per month or $120,000 per year.

- 5 -

increased his gross pay to approximately $573,000 in 1999 and 2000 and $872,000 in 2001.

Accepting either (1) husband's statement that the parties regularly invested all of his bonus money plus one month's salary towards retirement, or (2) wife's statement that they invested one-third of their income towards retirement, the evidence establishes that they regularly invested well over $150,000 towards retirement during the last few years of their marriage. Even assuming that taxes would reduce the amount regularly saved by 40% to $90,000, the trial court could properly consider that each party regularly saved and invested approximately $40,000 per year.[4] Adding wife's share of the parties' annual retirement savings to her established expenses, the trial court could reasonably conclude wife's needs totaled approximately $165,000.

The evidence regarding wife's ability to earn money to satisfy her needs, when viewed in a light most favorable to her, established that she earned an income of approximately $25,000 after taxes as a freelance financial writer. From the approximately $1,700,000 in assets she received in equitable distribution, the trial court determined she would earn 5% per year pretax, yielding $85,000 in investment income. However, Twenhafel testified that wife's investments would be subject to a 30% tax rate. Applying that tax rate against the $85,000 pretax investment income, wife's net investment income would be approximately $56,000 per year. Pursuant to the decree, wife would also receive $108,000 per year pretax in spousal support. Applying the same 30% tax rate to wife's spousal support reduces her real spousal support income to $75,600. Thus, wife's net income from her job, from the return on her investments, and from the spousal support award would equal $156,600.

As evidenced by its May 29, 2002 opinion letter, the trial court considered the parties' retirement savings plan and wife's expected income from her equitable distribution awards in

---

[4] This figure would be consistent with the trial court's equal division of nearly all marital assets.

determining the amount of spousal support. Reviewing the evidence and the statutory factors

pursuant to Code § 20-107.1(E), the trial court stated:

> The Court has considered the factors set out in § 20-107.1. The evidence reveals a 15 year marriage, the second for both parties. No children were born of this marriage but both had children from previous marriages who were cared for by both parties. Both parties are healthy, in their 50's, either employed or employable and capable of substantial earnings. During the marriage, one of the goals was the accumulation of sufficient assets, both retirement and non-retirement, to be able to retire at an early age without financial concerns. It is evident that the plan was successful during the marriage.

>      \*     \*     \*     \*     \*     \*     \*

> [There] is a clear legislative mandate to the Court to consider income from investments in determining spousal support. Therefore, the Court has considered that Ms. Miller will receive non-retirement assets in the approximate amount of 1.7 Million Dollars ($1,700,000) and that a reasonable rate of return on these investments would be 5% pretax.

> However, having considered this and imputing income to Ms. Miller, the Court must give consideration to her argument that the divorce should not cause her to alter her standard of living nor to change her investment strategies, thereby requiring her to devote all of her investment income to maintain the standard of living established during the marriage.

>      \*     \*     \*     \*     \*     \*     \*

> Ms. Miller has demonstrated her need for spousal support and Mr. Miller's ability to pay. The Court awards her monthly spousal support in the amount of $9,000.00.

### A. In Awarding Spousal Support, The Trial Court Must Consider the Parties' Savings Plan

The purpose of spousal support "is to provide a sum for such period of time as needed to

maintain the spouse in the manner to which the spouse was accustomed during the marriage,

balanced against the other spouse's ability to pay." Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d

723, 724 (1990); see also Gamble, 14 Va. App. at 573-74, 421 S.E.2d at 644 ("Where a claim for

support is made by a party who has been held blameless for the marital breach, the law imposes upon the other party a duty, within the limits of his or her financial ability, to maintain the blameless party according to the station in life to which that party was accustomed during the marriage."); Craig v. Craig, 595 S.E.2d 837, 840 (S.C. Ct. App. 2004) ("Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." (internal quotations omitted)).  Reflecting the purpose of spousal support, Code § 20-107.1(E) mandates consideration of certain factors designed to ascertain the spouse's lifestyle during the marriage.  These factors include the needs of the spouse, Code § 20-107.1(E)(1), the standard of living during the marriage, Code § 20-107.1(E)(2), and "[t]he decisions regarding employment, career, economics, education and parenting arrangements made by the parties during the marriage," Code § 20-107.1(E)(11).  Pursuant to these factors, the parties' savings plan during the marriage is not only an appropriate consideration, it is a mandatory one.  Accord In re Marriage of Drapeau, 114 Cal. Rptr. 2d 6, 13-15 (Cal. Ct. App. 2001) (reversing award of spousal support and remanding because "the trial court should have considered the parties' practice of savings as an element in their MSL [marital standard of living]"); Vadala v. Vadala, 550 S.E.2d 536, 539 (N.C. Ct. App. 2001) (reversing the trial court's judgment denying plaintiff alimony where the trial court failed to consider "the parties' pattern of savings . . . in determining the parties' accustomed standard of living"); In re Marriage of Hubert, 465 N.W.2d 252, 258 (Wis. Ct. App. 1990) (finding error where the trial court failed "to set maintenance at a level that would permit [the spouse] to continue saving and investing" as part of its consideration of the spouse's "standard of living"); see also In re Marriage of Winter, 10 Cal. Rptr. 2d 225, 228 (Cal. Ct. App. 1992) ("[W]e fail to see why Wife should be deprived of her accustomed lifestyle just because it involved the purchase of stocks and bonds rather than fur coats."); cf. Weizenbaum v. Weizenbaum, 12 Va. App. 899, 904, 407 S.E.2d 37, 40 (1991)

(noting that "[s]pousal support awards under Code § 20-107.1 may . . . exceed what is 'necessary' to maintain the spouse as the term is used in Code § 20-103" due to the litany of factors the trial court must review under Code § 20-107.1). Contra Mallard v. Mallard, 771 So.2d 1138, 1140-41 (Fla. 2000) (holding that "alimony may not include a savings component" and that "any accumulation of marital assets occasioned by the frugality of the parties during the marriage is taken into consideration by equitable distribution"); Kuroda v. Kuroda, 958 P.2d 541, 551-52 (Haw. Ct. App. 1998) (concluding that the supported spouse's "ability to continue to save and build up one's net worth is not a valid standard of living consideration justifying the award of increased alimony/spousal support").

Here, the trial court's award of spousal support in the amount of $9,000 per month gives appropriate consideration to the parties' pattern and custom of saving and investing a substantial portion of their income.[5] Such an award will allow wife to meet her monthly living expenses and to continue to save money and invest it in a manner to which she was accustomed during the marriage. We therefore hold that the trial court did not abuse its discretion in awarding spousal support to wife nor in setting spousal support at $9,000 per month.

B. The Trial Court Did Not Fail to Consider Wife's Investment Income

We further reject husband's corollary argument that the trial court erroneously failed to consider, or ignored, the income-generating potential of the assets wife received in the equitable

---

[5] We also note that Code § 20-107.1(E) mandates consideration of certain non-economic factors not amenable to a dollar-for-dollar consideration, such as the duration of the marriage and the non-monetary contributions of the parties to the marriage. See, e.g., Theismann v. Theismann, 22 Va. App. 557, 573, 471 S.E.2d 809, 816 (noting that the trial court must consider factors other than the parties' standard of living during the marriage, such as the factors that contributed to the dissolution of the marriage and the duration of the marriage), aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). Although the issue of whether non-economic factors could support the trial court's award of spousal support was briefly addressed by wife at oral argument, it was not fully developed or briefed. Accordingly, we do not address to what extent the non-economic factors found in Code § 20-107.1(E) authorize the trial court to enter an award of spousal support in an amount greater than the economic marital standard of living.

distribution award. Contrary to husband's argument, the trial court noted specifically that it considered wife's putative income from these assets, but it further determined that such income would not be sufficient to sustain the standard of living wife enjoyed during the marriage, a standard that included the parties' substantial penchant for saving.

### III. The Trial Court Did Not Err by Failing to Limit the Duration of the Spousal Support Award

Husband contends the trial court erred in failing to limit the duration of the spousal support award. Husband argues that a specified date upon which the spousal support award was to terminate was compelled by wife's financial estate and her access to retirement funds. We disagree and find no abuse of discretion.

Code § 20-107.1(C) provides: "The court, in its discretion, may decree that maintenance and support of a spouse be made in periodic payments for a defined duration, or in periodic payments for an undefined duration, or in a lump sum award, or in any combination thereof." On this record, we are unable to conclude that the trial court abused its discretion in awarding payments for an undefined duration. Joynes v. Payne, 36 Va. App. 401, 423, 551 S.E.2d 10, 21 (2001). Any change in either party's position regarding support is more properly addressed, not in speculated anticipation of change, but in relation to the current circumstances of the parties. See Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675, 679 (1990); see also Dickson v. Dickson, 23 Va. App. 73, 81, 474 S.E.2d 165, 169 (1996). As provided by Code § 20-109, the trial court retains jurisdiction to alter the amount of the support upon a proper showing of changed circumstances.

### IV. The Trial Court Did Not Fail to Consider Changes to Wife's Income as a Result of Our Reversal to the Equitable Distribution Award

Prior to this appeal, we considered husband's challenge to the trial court's 2002 equitable distribution award. See Miller v. Miller, No. 2261-02-4, 2003 Va. App. LEXIS 401 (Va.

Ct. App. July 15, 2003). There, we reversed a portion of the equitable distribution of husband's 457(f) benefits, the amount of which was known and receivable in March 2003, and clarified the marital share of certain performance-based deferred compensation plans.[6] In light of our reversal of certain portions of the equitable distribution award, we directed the trial court on remand to reconsider its spousal support award because the amount of wife's investment income was likely to be an issue once again.

During the hearing on remand, both parties stipulated that the changes to the equitable distribution award would result in wife receiving approximately $21,000 more than the original 2002 award. Indeed, the trial court noted that "the parties are in agreement, it appears to me today, that the net to Ms. Cox . . . of those changes is about $21,000." The trial court further found the change to be negligible, stating that it "would have no impact on the spousal support awarded previously in this matter." The trial court accordingly entered an order reflecting its findings on April 29, 2004.

We find no abuse of discretion in the trial court's determination that the changes to the equitable distribution award would have no impact on the spousal support award. Applying the 5% rate of return to the amount the additional award of assets wife received yields a yearly sum of $1,050 pretax, or $87.50 per month. We agree with the trial court that, given the evidence of wife's need and husband's ability to pay, this amount is not a significant change and has no material import in its consideration of a proper spousal support award. Therefore, we hold that the trial court did not err in failing to change the amount of the spousal support award.

---

[6] The amount of two performance-based deferred compensation plans—specifically husband's contract completion bonus and supplemental executive retirement plan (SERP)—was not entered into evidence prior to the initial 2002 award, and the record was not reopened on remand. In fact, husband specifically directed the court to consider only the 457(f) benefits in his brief on remand. Accordingly, husband will not be heard to the extent he argues on appeal that the trial court failed to consider his contract completion bonus and SERP.

V. Attorneys Fees

Wife requests an award of attorney's fees for expenses incurred in defending this appeal. Upon our review of the record, we find husband's appeal to be without merit with respect to all issues except that addressed in Part II.A. of this opinion. Accordingly, we direct the trial court on remand to award wife the reasonable attorney's fees she incurred in defending husband's appeal of those issues. Bchara v. Bchara, 38 Va. App. 302, 318, 563 S.E.2d 398, 406 (2002); see also O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

VI. Conclusion

For the foregoing reasons, we affirm the trial court's award of spousal support but remand for an award of attorney's fees to wife as outlined in this opinion.

Affirmed and remanded.