COURT OF APPEALS OF VIRGINIA


Present: Judges Kelsey, Petty and Senior Judge Bumgardner


JOSEPH B. VALDER

MEMORANDUM OPINION[*]

v.      Record No. 0650-06-4                          PER CURIAM
                                                      AUGUST 15, 2006

MARY M. VALDER


FROM THE CIRCUIT COURT OF FARFAX COUNTY
Leslie M. Alden, Judge

(John C. Maginnis III; Maginnis Law Office, on briefs), for
appellant.

(Eric F. Schell, on brief), for appellee.


Joseph Valder, husband, appeals a trial court order awarding Mary M. Valder, wife,

spousal support. He argues on appeal that the "trial court committed reversible error in failing to

impute passive income to [wife] for the yield that could have been achieved from her investment

assets" and it abused its discretion in its calculation of husband's spousal support obligation.

Upon reviewing the record and the briefs of the parties, we conclude that this appeal is without

merit.[1] Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

On appeal, we view the evidence and all reasonable inferences in the light most favorable

to the appellee as the prevailing party below. See McGuire v. McGuire, 10 Va. App. 248, 250,

391 S.E.2d 344, 346 (1990).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On July 28, 2006, the parties filed a joint motion requesting an extension of time to file appellee's brief and appellant's reply brief. The Court received those briefs, and the panel considered them in reaching its decision.

Husband and wife were married on September 5, 1970, and separated on June 21, 2004. Two children were born of the marriage, both of whom are emancipated. On December 7, 2005, the trial court conducted an ore tenus hearing. At the beginning of the hearing, wife's attorney advised the trial court that the parties had agreed to the distribution of all their property as follows: "The parties shall retain all property and assets presently held by them as their own without claim from the other to remove without limitation their CMA accounts, IRA accounts, personal property, the automobiles, cash accounts, artwork, clothing, and the like." The attorneys informed the trial court that the only issues it needed to determine at the hearing were "spousal support" and "the allocation of the survivor benefit premium."

Wife inherited a Merrill Lynch CMA account from her father upon his death several years earlier. J. Patrick Kearns owns an investment advisory firm and testified on behalf of husband. The trial court qualified Kearns as an expert in the field of financial advice. He reviewed a monthly statement from wife's CMA account for October 2005, and testified about the way in which the assets were allocated, namely, "87 percent equities, 12 percent fixed income, 1 percent cash/money market." "[Y]ear to date" through October of 2005, wife's Merrill Lynch CMA account earned "a little over $4,000." Kearns testified "it is a bit aggressive" based upon wife's "age and station" and suggested her "allocation of bonds should be roughly equal to [her] age." In other words, "60/40, two-thirds/one third bonds to stock would be more typical." Kearns opined that "a closed-end bond fund currently would probably pay about 8 percent and money markets would be about 2 and a half to 3 [percent] right now." He explained that ten-year treasury bonds yield "4 and a half percent," and explained that people who buy such bonds do so "not so much for the security of the income but for the security of principal."

On cross-examination, Kearns agreed that after paying capital gains, wife's CMA account would total $260,000, and he opined if she invested in the manner husband suggested, she could earn eight percent on this investment if she converted it to a fixed income-producing asset. He testified, "I am saying that on that portion allocated for income, that, yes, you could currently buy closed-end bond funds that trade on the New York Stock Exchange that have a current dividend yield paid monthly of about 8 percent." When asked how long he could project a return of eight percent for wife, Kearns testified:

> Well, closed end bond funds typically don't change their distributions. *They usually pay* a monthly dividend, because a closed-end fund is traded like a stock. It pays a dividend versus an interest payment.
> Now, the portfolio of that kind of a fund, *I would suspect*, is in the 20-year average life probably. There is a thing called duration, which is kind of like average life. *I would think* the duration might be 15 and the average life 20.

(Emphases added.)

Wife's attorney asked Kearns if he would encourage a sixty-year-old woman in wife's circumstances to appreciate her asset or convert it to an income-producing asset. Kearns replied, "[I]t's very much a personal decision." He explained that some people may want to enjoy the money while they have it, perhaps giving it to grandchildren, whereas other people may want to make sure they have income for life and/or to leave something for their children. According to Kearns, a client who desired to appreciate the asset and have some security in her future and be able to leave some money for her children would not remove money from the asset. Kearns explained that his evaluation was based on the risk tolerance in wife's CMA portfolio and conceded he did not know wife's risk tolerance.

D.H. Scarborough prepared wife's tax return. The trial court qualified her to testify as an expert regarding the tax consequences to wife if she was required to liquidate her long-term gain CMA account and invest the proceeds in income-producing assets. Scarborough explained that

wife would be taxed on $103,440 in long-term capital gains, resulting in a tax liability of $21,451. According to Scarborough, if wife were to convert her portfolio to fixed income investments, her asset would not grow and would likely depreciate over time.

Husband asked the trial court to impute $24,000 to wife's yearly income based on a projected "8 percent rate of return on the investment portfolio," and requested that the trial court order her to invest the $25,000 from the settlement agreement in that account. Husband also asked the trial court to impute $10,000 to wife's annual income based on her voluntary underemployment because she quit one of the jobs she previously held for two years.

Husband and wife were sixty years old at the time of the hearing. The trial court found that husband's monthly gross income was $11,400, and wife's was $5,400, including $400 monthly investment income she currently received from her CMA account. The trial court found wife was voluntarily underemployed, and as a result, it imputed to her an additional annual income of $10,000.

In addressing husband's other arguments, the trial judge ruled as follows:

> With respect to the other argument offered by [husband], I'm not persuaded by the evidence that [wife] should have income, additional income imputed to her as a result of the way she is managing her CMA account.
> I was not persuaded that the expert spoke with certainty that [wife] would be able to earn $24,000 in perpetuity on a nest egg of something less than $300,000; nor do I think she is required to invest that [$]25,000 that she is supposed to get as a result of the property settlement agreement into that same account in light of the other evidence that I heard in the case.

After "consider[ing] all of the factors in 20-107.1 in light of the evidence that has been received in the case," the trial court ordered that husband should pay wife spousal support "in the amount of $1,000 per month *until such time as husband retires*." (Emphasis added.)

In the final decree, the trial court referenced that husband "has paid to [wife], in accordance with the Settlement Agreement, $25,000 in order to settle the accounting of the Saddle Crescent proceeds."

**TRIAL COURT ABUSED ITS DISCRETION IN REFUSING**
**"TO CONSIDER ANY AMOUNT OF POTENTIAL INVESTMENT INCOME TO [WIFE]"**

"A spouse's entitlement to support and the amount of the award are matters within the sound discretion of the trial court.  In determining the amount of an award, the court must consider all of the factors set forth in Code § 20-107.1."  Stubblebine v. Stubblebine, 22 Va. App. 703, 707, 473 S.E.2d 72, 74 (1996) (*en banc*).  "When the record discloses that the trial court considered all of the statutory factors, the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion."  Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992).

Under appropriate circumstances, a trial court may impute income to a party who seeks spousal support.  See Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990).  The court "must look to current circumstances and what the circumstances will be 'within the immediate or reasonably foreseeable future,' not to what may happen in the future."  Id. at 735, 396 S.E.2d at 679.  Where imputation of income is proper, the evidence must enable the trier of fact to reasonably project the amount to be imputed.  See Hur v. Virginia Dep't of Soc. Servs., 13 Va. App. 54, 61, 409 S.E.2d 454, 459 (1991).  Moreover, in awarding spousal support, the trial court may give appropriate consideration to a party's custom of saving and investing.  Miller v. Cox, 44 Va. App. 674, 684-86, 607 S.E.2d 126, 131-32 (2005).

"[A] trial court is not required to accept the opinion of an expert.  'It is well established that the trier of fact ascertains [an expert] witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony.'"

Piatt v. Piatt, 27 Va. App. 426, 434, 499 S.E.2d 567, 571 (1998) (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*)).

The trial court included wife's present investment income in her gross monthly income, prior to awarding spousal support. Although the trial court stated it did not believe wife would be able to earn additional investment income of $24,000 per year "in perpetuity," it ordered spousal support for a limited period of time, namely until husband's retirement. Husband was sixty years old at the time of the hearing. Its limitation language necessarily negated any reasonable interpretation that it required such income in perpetuity. Before mentioning that phrase, the trial court indicated it was not persuaded by the evidence that wife should have additional income imputed to her as a result of the way she managed her investment account. Kearns' testimony was general and indefinite, as shown by his use of subjective language, that he "would suspect," he "would think" and "usually." Moreover, Kearns conceded on cross-examination that an investor's method of managing his or her account was a subjective decision related to the personal goals of each investor and he was not aware of wife's specific risk tolerance.

Accordingly, the trial court did not commit reversible error or abuse its discretion in refusing to impute additional investment income to wife.

### ON REMAND, THE TRIAL COURT SHOULD BE DIRECTED TO INCLUDE THE $25,000 WIFE RECEIVED FROM THE SETTLEMENT AGREEMENT IN INCOME PRODUCING INVESTMENT FUNDS

After considering the evidence presented and the relevant factors, the trial court refused to require wife "to invest that [$]25,000 that she is supposed to get as a result of the property settlement agreement into" her CMA Merrill Lynch account. Based on the evidence and under the circumstances, we cannot say the trial court abused its discretion in refusing to require wife to invest the $25,000 in an interest producing account. See Miller, 44 Va. App. at 684-86, 607

S.E.2d at 131-32 (in awarding spousal support, trial court may give appropriate consideration to the parties' pattern and custom of saving and investing).

Accordingly, we summarily affirm the decision of the trial court. <u>See</u> Rule 5A:27.

<u>Affirmed.</u>