COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, McCullough and Senior Judge Annunziata
Argued at Alexandria, Virginia


KEVIN D. JONES

                                   MEMORANDUM OPINION[*] BY

v.      Record No. 0106-11-4          JUDGE ROBERT P. FRANK
                                       JANUARY 24, 2012

BRENDA F. MOODY-JONES


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Richard B. Potter, Judge

Kevin D. Jones, *pro se*.

Brenda F. Moody-Jones, *pro se*.


Kevin Jones, father/appellant, appeals from an order entered by the Circuit Court of Prince

William County, addressing spousal support, custody, and visitation. Specifically, appellant

contends the trial court erred in declining to modify spousal support and custody/visitation, based on

a change in circumstances. For the reasons stated, we affirm the judgment of the trial court.

BACKGROUND

The parties were married on January 1, 1983. Three daughters were born of the marriage,

although at the time the parties divorced, only K.J. was still a minor. The parties separated on

August 14, 2007.

While the parties were married, father was the financial provider, and mother stayed home

with the children. After the separation, in October or November of 2008, mother took a job as a

permanent substitute teacher. Mother did not seek any other work between the time of the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

separation and the time of the divorce hearing. Mother began working on her resume, but did not complete it prior to the hearing.

During the divorce hearing, the trial court found that mother supported father's military career and that, as a result, her own employment was constrained. On April 10, 2009, the trial court issued a final decree granting a divorce, based on a one-year separation. The trial court awarded mother $2,180 per month in spousal support and imputed income of $1,135 per month to her. The imputed income was based on the number of hours mother was working as a substitute teacher, at the federal hourly minimum wage of $6.55.

The trial court gave legal and physical custody of K.J. to mother, because the child had been with mother all of her life, and because of father's military travel. The final decree also established a visitation schedule for father with K.J. The final decree was not appealed.

On May 7, 2010, father filed a petition for a rule to show cause, alleging mother had not complied with the final decree of divorce, as it pertained to visitation, unreimbursed medical expenses, and the child dependency exemption. Father then filed a motion to modify visitation, custody, and spousal support on July 1, 2010.

On November 5, 2010, mother served father with her second supplemental answer to father's first set of interrogatories. Mother's answer stated that she was terminated from her $13 per hour position with Friends & Company Staffing Services in September of 2010, and that mother had gone back to substitute teaching for the Prince William County Public Schools.[1]

The trial court heard evidence and argument on father's motions for a show cause and for modifications on November 8, 2010.

---

[1] At trial, mother testified that she was terminated from the data entry job because she did not have the skills to perform the job well.

Father testified at the hearing. He stated that at the time of the original divorce decree, he lived in Hampton, Virginia, and was granted visitation with K.J. every second and fourth weekend. Father subsequently moved to Woodbridge, Virginia, within seven miles of mother and K.J.'s residence. Father testified that he had only had one overnight visitation with K.J. since he moved, and he stated that mother had left it up to K.J. to decide whether or not to visit with father. Father also testified he did not get two weeks of summer visitation, which was required in the divorce decree, because K.J. refused to go with him. Father further stated he wished to be more involved in K.J.'s college search, as he had done with his two older daughters.

Father testified that in February of 2009, he asked mother to sign the dependency exemption form to cover K.J.'s anticipated college years. In March of 2009, mother sent father a dependency exemption form for 2009 only.

The trial court referred to the original divorce decree, which stated: "The Defendant, Kevin D. Jones, shall be entitled to the child dependency exemption for [K.J.] hereafter and until her emancipation." The court found that mother signed the exemption for 2009 and was not required to sign an order for future years.

## ANALYSIS

## SPOUSAL SUPPORT

Father first contends the trial court erred in its decision not to modify spousal support. He notes two assignments of error with nine sub-parts. Distilled to its essentials, father argues the trial court erred in not imputing income to mother, in finding no material change in circumstances, and in failing to apply Code § 20-109(B)(ii), which allows the court to modify an award of spousal support upon finding that "an event which the court anticipated would occur during the duration of the award and which was significant in the making of the award, does not in fact occur through no fault of the party seeking the modification." This contention is premised

on father's conclusion that the event anticipated was for mother to obtain full-time employment and to make a good faith effort to obtain full-time work. Nowhere in the final decree or in the court's pronouncements does the trial court anticipate that mother will seek full-time employment. To the contrary, on March 16, 2009, the trial court opined:

> Now, with regard to alimony, as I mentioned, I believe that it was the decision of both parties that [mother] primarily work inside the home raising these children . . . . And I also believe that it was the agreement of both parties that she work as a substitute teacher to accommodate her schedule to the schedule of her school-age child, to be there when the child is home from school and on vacation.

The final decree of divorce, entered April 10, 2009, imputed income to mother at $1,135 per month and ordered father to pay spousal support to mother at $2,180 per month, for a defined period of twelve years. The trial court calculated the imputed income based on $6.55 per hour, then the minimum wage, and noted that the imputation was based on the age of the minor child, as well as the hours mother was working.

During 2009 and 2010, mother worked as a substitute teacher for Prince William County Public Schools, at a daily rate of $79 In August 2010, mother worked for Friends & Company, a temporary staffing agency, in a data entry position, earning $13 per hour. Mother testified she did not have the skills to do the job, and thus she was terminated.

A letter from Friends & Company, dated January 17, 2011, indicated that mother had low computer skills and that her work assignment was ended "due to poor work performance." The letter further stated it had not heard from mother since she refused her last assignment on October 25, 2010.

In her supplemental interrogatories, dated November 5, 2010, mother admitted that her work hours at Friends & Company were Monday through Friday, 9:00 a.m. – 6:00 p.m. In those interrogatories, mother further stated she was terminated because her skills were insufficient to

maintain employment. Mother then took another temporary job with Friends & Company for $11 per hour. This position lasted less than a month.

Mother's payroll history at Friends & Company indicated weekly paychecks from August 8, 2010 until October 17, 2010, ranging from eight to 39 hours per week. Thereafter, mother returned to work with the county as a substitute teacher, again earning $79 per day.

On July 29, 2010, father filed a motion for vocational evaluation of mother. The trial court ordered a vocational evaluation to determine mother's earning capacity and whether she was voluntarily under-employed. In accordance with the trial court's order, Anthony K. Bird, a vocational evaluation expert, filed a copy of the vocational assessment report with the trial court on August 26, 2010. Bird's report stated that mother had begun temporary work as a data entry clerk with Friends & Company, an employment agency, on August 6, 2010. Mother worked 40 hours per week, earning $13 per hour.

At trial, Bird testified mother's typing skills were good, but her word processing skills were "not so good, needing to upgrade those skills."[2] Mother would need four to six weeks to upgrade. Bird stated mother was qualified to be a receptionist.[3] He testified that the average salary for that position in the Washington, D.C. area is $30,000-$31,000 per year. If mother would accept training in word processing, she would be qualified to be a secretary, earning an average of $43,000 per year. In addition to his testimony, Bird produced a written report, which was admitted into evidence, in which he concluded that mother could earn between $27,000-$35,000 per year.

---

[2] Testing done by Friends & Company revealed mother was in the 10th percentile for computer skills.

[3] Mother last worked as a receptionist and a secretary over twenty-five years ago.

- 5 -

Bird testified he had found a number of receptionist and secretarial positions currently available in the Washington, D.C. area. On cross-examination, Bird acknowledged nothing had changed since 2009 "in terms of her employment." He testified that, at the time of the divorce hearing in 2009, he would have imputed income to mother in the same range of $27,000-$35,000.

The trial court found there had been no change in circumstances since entry of the final decree of divorce, except for the income of both parties. The court noted that Bird testified there was no change in mother's employment circumstances, and observed the expert could have given the same testimony at the divorce hearing. The court stated:

> The income, the occupations of these parties have not changed. If anything, hers has changed only to the effect that it no longer has to be imputed by the court, because we know she has an actual income as a substitute teacher. The problem with that argument is it is now less than what it was back in 2009.

In the order denying modification, entered December 17, 2010, the trial court found:

> The income and occupations of the parties have not changed.
>
> The [mother's] current income is now less than it was back in April 2009.
>
> [Mother's] income has only changed to the effect that it no longer has to be imputed because she has an actual income as a substitute teacher.
>
> The only other change has been in [father's] income.
>
> There has not been a material change that would allow modification of spousal support.

Spousal support decisions fall within the broad discretion of the trial court, and this Court's "review is limited to determining whether the trial court clearly abused its discretion." Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005) (citing Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992)). "The moving party in a petition for

modification of support is required to prove [1] a material change in circumstances; and [2] that this change warrants a modification of support." Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989). Furthermore, the burden is on the moving party to prove these allegations "by a preponderance of the evidence." Floyd v. Floyd, 1 Va. App. 42, 45, 333 S.E.2d 364, 366 (1985).

"Whether a change in circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence." Sullivan v. Jones, 42 Va. App. 794, 806-07, 585 S.E.2d 36, 42 (2004) (citing Ohlen v. Shively, 16 Va. App. 419, 423, 430 S.E.2d 559, 561 (1993)). "In the absence of a material change in circumstances, reconsideration . . . would be barred by principles of *res judicata*." Hiner v. Hadeed, 15 Va. App. 575, 580, 425 S.E.2d 811, 814 (1993).

With regard to any material change in circumstances, "[t]he petitioner must demonstrate a material change in circumstances from the most recent support award," Roberts v. Roberts, 41 Va. App. 513, 528, 586 S.E.2d 290, 297 (2003) (citing Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991)), and "[t]he material change must relate to either the need for support or the ability to pay," Barton v. Barton, 31 Va. App. 175, 177-78, 522 S.E.2d 373, 374 (1999) (citing Richardson v. Richardson, 30 Va. App. 341, 347, 516 S.E.2d 726, 728 (1999)).

The evidence reveals that, in terms of training, education, job skills, and earning capacity, mother's circumstances have not changed. That mother obtained a temporary position with Friends & Company does not, when viewing the evidence as a whole, amount to a change in circumstances. Bird testified that mother's potential salary range of $27,000-$35,000 would remain the same even if she had not worked at Friends & Company. Moreover, this potential salary range would be applicable whether or not mother worked in a data entry position. Bird further testified that nothing has changed since 2009 in terms of mother's employability. He

indicated that in 2009, he still would have imputed income to mother between $27,000 and $35,000, based on her earning potential.

The amount of income that could have been imputed to mother remained the same, despite her temporary employment with Friends & Company. Stated differently, mother's earning capability did not change between the date of the divorce decree and the date of the modification hearing.

In its pronouncement, the trial court specifically referred to Bird's opinion that there was no material change in circumstances regarding mother's employability. The trial court indicated that the expert's present testimony would have been the same if he had testified at the divorce hearing, and stated, "[t]he net effect would be the same." The court concluded that mother's education, experience, and earning capability had not changed, and this conclusion was supported by evidence in the record.

"In considering a denial of a request for a reduction of support payments, courts must look to 'objective evidence available at the time of the previous award in order to assess what increases in expenses might reasonably have been expected.'" Barton, 31 Va. App. at 179, 522 S.E.2d at 375 (quoting Furr v. Furr, 13 Va. App. 479, 482, 413 S.E.2d 72, 74 (1999)). "In doing so, we avoid assessing such increases in light of evidence that these increases have, in fact, occurred." Furr, 13 Va. App. at 482, 413 S.E.2d at 74.

In this case, because the trial court correctly concluded that there was no material change in circumstances, we only briefly address imputed income. As stated above, the amount of income, if imputed to mother at the modification hearing, was the same that would have been imputed to mother at the time of the divorce. Assuming, without deciding, that income in the range of $27,000-$35,000 should have been imputed, Bird's testimony demonstrated that there was still no change in circumstances between the time of the divorce and the time of the

modification hearing.  Appellant failed to demonstrate a material change in circumstances, as required by Schoenwetter, 8 Va. App. at 605, 383 S.E.2d at 30.  Thus, we conclude that the trial court correctly denied father's motion to modify spousal support.

CUSTODY/VISITATION

By final decree of divorce, entered April 10, 2009, mother was granted sole legal and physical custody of K.J., with father granted specific visitation.  Father was ordered to provide health insurance for K.J.  Mother was to pay the first $250 of unreimbursed medical expenses for K.J., and the parties were to share all remaining unreimbursed medical expenses in the same proportion as their respective incomes.

On July 1, 2010, father filed a motion to modify visitation, custody and spousal support.  As to custody and visitation, father alleged a change in circumstances as follows:  1) his relocation closer to K.J.'s residence; 2) mother's failure to facilitate visitation; 3) failure of the parties to resolve K.J.'s orthodontic treatment; and 4) mother's admonition to K.J. that the child "has to do only what her mother says."

Father prayed that he be granted shared physical and joint legal custody of K.J., with shared decision-making rights.  He also asked for expanded visitation.

After hearing evidence, the trial court denied the motion.  The trial court found there had been no showing of a material change in circumstances.  In that order, the trial court made specific factual findings:

1)  There was no evidence that custody should be changed;

2)  Father has never had extensive visitation with K.J. and did not have so for many years prior to the divorce;

3)  Father has had no extensive overnight visitation;

4)  Father does not have a close relationship with K.J., nor is their relationship good;

5) Mother has met K.J.'s emotional, intellectual, and physical needs and has had a close relationship with her;

6) Mother has not actually encouraged K.J. to visit with father, nor does she have the propensity to do so;

7) Mother has not unreasonably denied father access to or visitation with K.J.;

8) The relationship between father and K.J. has been strained and will take time to heal, if it ever can; and

9) If K.J. decides not to participate in visitation, it will be difficult for father to establish a caring relationship with her.

The decree also ordered the parties to go forward with K.J.'s orthodontic care and allocated the division of such costs. The trial transcript was made part of the order.

At the conclusion of the hearing, the trial court found it was not in the child's best interests to change custody, pointing to father's poor relationship with K.J.

On appeal, father contends the trial court erred in finding no material change in circumstances. Specifically, father contends the trial court did not consider his relocation closer to K.J.,[4] mother's failure to obtain orthodontic care for K.J., and mother's efforts to alienate K.J. from father.

"On appeal, we review the evidence in the light most favorable to the prevailing party below." Hughes v. Gentry, 18 Va. App. 318, 321-22, 443 S.E.2d 448, 451 (1994). As we have stated, "[w]hether a change of circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence." Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986). In determining what will promote a child's best interests, we afford

---

[4] In the transcript of the original divorce proceeding, the trial court stated that if father moved closer, "that would certainly be a change in circumstances, but I don't want to build in a potential change in the visitation."

the trial court broad discretion. <u>Brown v. Brown</u>, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999). "[A]s long as the evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." <u>Id.</u>

Code § 20-108 provides:

> The court may, from time to time after decreeing as provided in [Code] § 20-107.2 . . . revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require. The intentional withholding of visitation of a child from the other parent without just cause may constitute a material change of circumstances justifying a change of custody in the discretion of the court.

Code § 20-108 creates a two-prong test. A party seeking to modify an existing custody order bears the burden of proving that a change in circumstances has occurred since the last custody determination and that the circumstances warrant a change of custody to promote the children's best interests. <u>Brown</u>, 30 Va. App. at 537, 518 S.E.2d at 338. The same two-prong test applies to visitation modification. <u>Duva v. Duva</u>, 55 Va. App. 286, 291, 685 S.E.2d 842, 845 (2009).

The trial court found no material change of circumstances. However, even assuming, without deciding, that there was a material change in circumstances, the trial court concluded that it was not in the child's best interest to modify custody or visitation. As such, father did not prove the second prong of the test for modification. Thus, we need not address father's argument concerning a change in circumstances.

"In deciding whether to modify a custody order, the trial court's paramount concern must be the children's best interests." <u>Brown</u>, 30 Va. App. at 538, 518 S.E.2d at 338. "Code § 20-124.3 specifies the factors a court 'shall consider' in determining 'the best interests of a child for . . . custody or visitation.'" <u>Id.</u>

- 11 -

Code § 20-124.3 provides in part:

> In determining best interests of a child for purposes of determining custody or visitation arrangements including any *pendente lite* orders pursuant to [Code] § 20-103, the court shall consider the following:
>
> \*   \*   \*   \*   \*   \*   \*
>
> 3. The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child;
>
> \*   \*   \*   \*   \*   \*   \*
>
> 5. The role that each parent has played and will play in the future, in the upbringing and care of the child;
>
> 6. The propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child;
>
> 7. The relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child . . . .

While the trial court is obligated to examine all of the factors outlined in Code § 20-124.3, "it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Brown, 30 Va. App. at 538, 518 S.E.2d at 338 (quoting Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995)).

Here, in reaching its decision, the trial court weighed all of the factors enumerated in Code § 20-124.3. Our inquiry, then, is whether evidence supports the trial court's findings. As we have stated, if the trial court's ruling is supported by evidence in the record, we must affirm that ruling on appeal. Id.

The trial court's refusal to modify custody and visitation is premised on father's strained relationship with K.J. Evidence in the record supports this finding. Mother testified that prior to

the *pendente lite* order, father's visitation was "none." Father had almost no overnight visitation (father lived in Hampton, Virginia at that time). Mother characterized father's relationship with K.J. as "demanding," "poor" and "overbearing." In the summer of 2009, father never exercised his visitation, although according to mother, K.J. was "available for him." At the time of the hearing, K.J. did not want to visit with father. Father's visitation was infrequent and sporadic.

Father also argues mother's failure to seek orthodontic treatment for K.J. and mother's failure to encourage visitation warrants a change in custody and visitation.[5] The trial court considered K.J.'s need for such treatment and responded by directing the parties to obtain orthodontic treatment, effectively addressing father's concern over this issue. However, the trial court implicitly found these two factors did not provide a basis for modifying custody and visitation. The trial court weighed these issues, and this Court will not "supplant the [trial court's] judgment with our own." Hughes, 18 Va. App at 325, 443 S.E.2d at 452.

Finding that evidence in the record supports the trial court's finding that it is not in the child's best interest to modify custody and visitation, we affirm the trial court's ruling.

CONCLUSION

For the reasons stated herein, we affirm the judgment of the trial court.

Affirmed.

---

[5] It is uncontested that mother did not pay her share of K.J.'s orthodontic treatment.