COURT OF APPEALS OF VIRGINIA

Present:    Judges Frank, Kelsey and Haley
Argued at Richmond, Virginia


WILLIAM JURDAN DAVIS, JR.
                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1241-09-2              JUDGE ROBERT P. FRANK
                                                    JANUARY 26, 2010
MARTHA FERN ATKINSON DAVIS


FROM THE CIRCUIT COURT OF MADISON COUNTY
Daniel R. Bouton, Judge

Ronald R. Tweel (Michie, Hamlett, Lowery, Rasmussen & Tweel,
PLLC, on briefs), for appellant.

Thomas M. Purcell (Gail Starling Marshall; Thomas M. Purcell,
P.C., on brief), for appellee.


William Jurdan Davis, Jr., appellant (husband), contends the trial court erred in:

(1) awarding Martha Fern Atkinson Davis, appellee (wife), a divorce on the grounds of adultery;

(2) refusing to award him a divorce on the ground of desertion; (3) finding that husband committed

marital waste; (4) making an improper equitable distribution award; (5) making an award of spousal

support; and (6) awarding partial attorney's fees to wife.  For the reasons stated, we affirm the

judgment of the trial court.

STANDARD OF REVIEW

The standards of review when a trial court considers a report of a commissioner in

chancery and when this Court reviews the matter on appeal are well established:

> "While the report of a commissioner in chancery does not carry the
> weight of a jury's verdict, Code § 8.01-610, it should be sustained
> unless the trial court concludes that the commissioner's findings

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

are not supported by the evidence. This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence, but is not applicable to pure conclusions of law contained in the report. On appeal, a decree which approves a commissioner's report will be affirmed unless plainly wrong."

Roberts v. Roberts, 260 Va. 660, 667, 536 S.E.2d 714, 718 (2000) (quoting Hill v. Hill, 227 Va. 569, 576-77, 318 S.E.2d 292, 296-97 (1984) (citations omitted)).

When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences. Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002). Under that principle, we are required in this appeal to discard husband's evidence in conflict with that of wife and accept as true all the credible evidence favorable to her, as well as all fair inferences that may be drawn from the credible evidence. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

## GROUNDS OF DIVORCE

### Husband's Adultery

Husband contends the trial court erred in finding that wife met her burden of proving adultery. Wife responds that she presented clear and convincing evidence of husband's adultery and that the commissioner and the trial court were not plainly wrong in so finding. We agree with the wife.

"'To establish a charge of adultery the evidence must be clear, positive and convincing. Strongly suspicious circumstances are inadequate. Care and circumspection should accompany consideration of the evidence.'" Romero v. Colbow, 27 Va. App. 88, 93, 497 S.E.2d 516, 519 (1998) (quoting Painter v. Painter, 215 Va. 418, 420, 211 S.E.2d 37, 38 (1975)). However, "'[w]hile a court's judgment cannot be based upon speculation, conjecture, surmise, or suspicion, adultery does not have to be proven beyond a reasonable doubt.'" Gamer v. Gamer, 16 Va. App.

- 2 -

335, 339, 429 S.E.2d 618, 622 (1993) (quoting Coe v. Coe, 225 Va. 616, 622, 303 S.E.2d 923, 927 (1983)). Rather, the evidence must "'produce in the mind of the trier of facts a firm belief or conviction as to the allegations [of adultery] sought to be established.'" Cutlip v. Cutlip, 8 Va. App. 618, 621, 383 S.E.2d 273, 275 (1989) (quoting Seemann v. Seemann, 233 Va. 290, 293 n.1, 355 S.E.2d 884, 886 n.1 (1987)). "It is well settled, however, that such proof may be by circumstantial as well as direct evidence." Bowen v. Pernell, 190 Va. 389, 393, 57 S.E.2d 36, 38 (1950).

The evidence before the commissioner established that husband and Blair Carter had known each other socially and would meet frequently at a tennis club. On November 1, 2003, husband and Carter had dinner with husband's daughter and son-in-law while his wife was out of town. Carter invited husband back to her house to give him a birthday present. After consuming champagne together in celebration of his birthday, husband spent the night at Carter's house. Ms. Carter testified that husband slept on the couch and that any physical contact amounted only to a birthday kiss on his cheek.

Carter and husband remained in frequent telephone contact, often leaving messages for one other. On one occasion Carter left the following message for husband:

> I miss you. I love you. It's freezing up here. Good luck on
> Sunday. Look forward to seeing you Sunday. Appreciate it if you
> wear something I could unbutton, preferably with my teeth.
> Message you left me on Monday (inaudible) and I am ready now.
> Mmm, mmm, mmm. I love you. I miss you. I'll talk to you later.

On another occasion, Carter said "[y]ou are my sex life and I love it." In yet another message, Carter explained, "I may be your sex life. I think either way would be just terrific. I get horny just talking to you and hearing your voice. It's amazing."

At the commissioner's hearing, Carter explained that the phone messages were just an "outrageous joke" and that she tells everyone she loves them ever since the events of September

11, 2001. She denied leaving some of the messages, although tape recordings of those messages were admitted into evidence before the commissioner. A friend of the wife testified that she listened to some of the recordings and accurately transcribed them. The written transcriptions were also admitted into evidence. Husband denied ever receiving any of the messages.

Evidence before the commissioner also revealed that husband kept Viagra in his truck, while explaining to his wife that he was impotent and that Viagra would not help. Husband explained that he did not bring the Viagra into the house because of the humiliation associated with having to take the medication.

Although both denied a sexual relationship, the commissioner found clear and convincing evidence of adultery. In so ruling, he determined that neither husband nor Carter provided a credible explanation for the sexually explicit phone messages, or of their behavior in general.

In his report, the commissioner set forth specific findings of fact which led to his conclusion that husband was involved in an adulterous relationship with Ms. Carter. He explained that he found the tone of the phone messages to be "sweet, tender, and intimate," with indications of both a sexual relationship and an emotional bond. While Carter testified that the messages were jokes, the commissioner found that "the tone of the messages was not joking" and that "a reasonable inference can be drawn from the tone and content of the phone messages that husband and Ms. Carter had an ongoing sexual and romantic relationship." The commissioner also took into consideration evidence of the overnight stay at Ms. Carter's house.

The trial court, in adopting the commissioner's report, accepted the commissioner's finding that the testimony of husband and Ms. Carter was unworthy of belief. The trial court explained, "It is not necessary for the court to review the many factors that led the commissioner to reject their testimony. It need only be pointed out that there is sufficient evidence in the record to support the commissioner's finding regarding the testimony of these two witnesses."

In that light, the court evaluated the evidence in the record and concluded that there were facts and circumstances in the record to establish adultery.

We agree with husband that the activity of November 1, 2003 does not alone prove adultery. However, husband would like us to view that night in isolation from other evidence of sexual activity. We decline to do so. As previously stated, Carter's sexually infused phone messages, coupled with the court's rejection of a credible explanation for such messages, compel a finding of adultery. Cf. Seemann, 233 Va. at 294, 355 S.E.2d at 886 (finding insufficient evidence to support adultery where wife stayed in hotel rooms with man but denied a sexual relationship); Dooley v. Dooley, 222 Va. 240, 246, 278 S.E.2d 865, 868-69 (1981) (finding insufficient evidence of adultery where men stayed overnight at wife's home, but court found testimony of no sexual behavior credible).

We find no error in the trial court's findings. Carter and husband admitted to socializing together, and provided no believable explanation regarding their conduct. Ms. Carter also admitted to leaving sexually explicit phone messages for husband, and, again, provided no credible explanation. "[I]n determining whether clear and convincing evidence supports a finding of adultery, the Supreme Court and this Court have consistently reviewed the record to determine not only whether the evidence merely established suspicious conduct, but also whether a credible explanation existed for the circumstances." Hughes v. Hughes, 33 Va. App. 141, 150, 531 S.E.2d 645, 649 (2000).

We find the trial court did not err in determining that wife proved by clear and convincing evidence that husband committed adultery.

### Desertion

Husband argues that the trial court erred in failing to grant him a divorce on the grounds of desertion. As discussed above, we find that the trial court did not err in finding husband

committed adultery.  As a result, the trial court granted wife a divorce on that ground.  Assuming without deciding that grounds existed for the trial court to award husband a divorce on desertion, the trial court was free to select any sufficient ground in awarding the divorce.  In this case, the trial court chose adultery and we find no error.

"'Where dual or multiple grounds for divorce exist, the trial judge can use his sound discretion to select the grounds upon which he will grant the divorce.'"  Konefal v. Konefal, 18 Va. App. 612, 613-14, 446 S.E.2d 153, 154 (1994) (quoting Williams v. Williams, 14 Va. App. 217, 220, 415 S.E.2d 252, 254 (1992)).  Trial courts are "not compelled 'to give precedence to one proven ground of divorce over another.'"  Williams, 14 Va. App. at 220, 415 S.E.2d at 253 (quoting Robertson v. Robertson, 215 Va. 425, 426, 211 S.E.2d 41, 43 (1975)).  Thus, because more than one ground existed, the trial court was free to choose between those grounds in granting the divorce, and did not abuse its discretion by granting the divorce to wife on the grounds of adultery because that ground was supported by the evidence.  Fadness v. Fadness, 52 Va. App. 833, 840, 667 S.E.2d 857, 861 (2008).

## MARITAL WASTE

Husband and wife were married on September 6, 1986 and separated on November 9, 2003.  On September 23, 2003, husband cashed three certificates of deposit (CDs) issued by BB&T.[1]  On that same day, husband purchased a property in Charlottesville (the "Cambridge Circle" property).

---

[1] CD # 7001051967, in the amount of $51,750.56, was purchased in husband's name on June 30, 2000.  CD # 7000956200, in the amount of $63,828.92, was purchased on July 7, 1999 in the name of Madison Mills Steel Company (MMSC).  CD # 7002155755, in the amount of $77,257.59, was purchased on July 15, 2002 by MMSC (husband concedes that this CD is marital property).

Husband and wife separated one month after husband purchased the property. The commissioner and the trial court found the CDs to be marital assets. The Cambridge Circle property was declared to be husband's separate property.

Husband assigns error to the trial court's finding that husband committed marital waste under Code § 20-107.3 with regards to three CDs totaling $193,837.07. Husband contends that wife failed to present any credible evidence to meet her burden in establishing that husband committed waste.

Generally, "[w]aste occurs 'where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.'" Thomas v. Thomas, 40 Va. App. 639, 644-45, 580 S.E.2d 503, 505 (2003) (quoting Smith v. Smith, 18 Va. App. 427, 430, 444 S.E.2d 269, 272 (1994)). "To allow one spouse to squander marital property is to make an equitable award impossible." Booth v. Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988).

In this case, husband contends two of the CDs, # 7001051967 and # 7000956200, were separate property and argues that he cannot commit waste with separate property. He concedes that the third CD, # 7002155755, is marital property but denies committing waste. However, both the commissioner and the trial court found that all three of the CDs were marital assets. As we will further discuss later in this opinion, the trial court's classification of property as marital or separate is a factual finding. Therefore, that classification will be reversed on appeal only if it is "'plainly wrong or without evidence to support it.'" Ranney v. Ranney, 45 Va. App. 17, 32, 608 S.E.2d 485, 492 (2005) (quoting McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994)).

The commissioner further found that these marital assets were used for a non-marital purpose – namely, to purchase the Cambridge Circle property, which was husband's separate

asset.[2] Husband claims that he was not anticipating separation or divorce at the time he used the CDs to purchase the property. However, the commissioner also found that husband cashed the CDs and purchased separate property in anticipation of divorce or separation. In fact, the commissioner made a finding that the marriage had broken down, and the trial court affirmed the commissioner's findings. Furthermore, there is evidence in the record to support these factual findings.

At the time husband used the CDs to purchase separate property, he had been telling wife for months that he did not want to be with her. He had begun to eat his meals and sleep separately from wife. Husband was also involved in an ongoing romantic and sexual relationship with Blair Carter. In September of 2003, wife had discovered numerous sexually explicit messages from Ms. Carter on husband's cell phone. Also in September of 2003, wife discovered Viagra in husband's truck, after husband had previously told wife that he was impotent and that Viagra would not work for him. Ultimately, the parties separated barely more than one month after husband cashed the CDs. From these facts, the trial court could properly infer that husband was planning for the end of the marriage.

On appeal, a decree that has confirmed a commissioner's report is presumed to be correct, McGrue v. Brownfield, 202 Va. 418, 427, 117 S.E.2d 701, 708 (1961), and will be affirmed unless plainly wrong, Sprott v. Sprott, 233 Va. 238, 240, 355 S.E.2d 881, 882 (1987). Based on the evidence, the commissioner and the trial court concluded that husband wasted $192,837.07 of marital funds. We agree with that ruling. Such wasted funds must be returned to the marital estate, so that the distribution is fair and equitable.

---

[2] The parties do not contest the non-marital use.

- 8 -

<u>BB&T Certificates of Deposit -- Classification</u>

Husband next argues that the trial court erred in finding that CDs # 7001051967 and # 7000956200 were marital assets, rather than husband's separate property. The CDs in question were purchased during the marriage. Therefore, they are presumed to be marital property. Separate property is defined, in relevant part, as "property, real and personal, acquired by either party before the marriage" or "property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property." Further, "[i]ncome received from separate property during the marriage is separate property if not attributable to the personal effort of either party." Code § 20-107.3(A)(1).

Husband contends that he traced CD # 7001051967 to the proceeds of his separate property, specifically the sale to Coleman Lumber of timber from real estate he owned prior to the marriage. It is not contested that the real estate was separate property. However, the evidence established that husband cashed the $45,000 check from Coleman Lumber on January 12, 2000, six months before he purchased the CD. Husband testified that he maintained the cash for an emergency, as he had recently had surgery. The evidence also showed that on June 30, 2000, the same day that husband purchased the CD, he wrote a check from his MMSC account to First Virginia Bank, which later became BB&T, for $60,000.[3] Husband claimed this was a repayment of a loan made by him to MMSC, but he produced no records of such a loan and he did not explain what happened to that $60,000. The commissioner concluded that this money

_____

[3] The record does not reflect what happened to the $45,000 from January 12 to June 30, 2000. This is a substantial break in any tracing process.

was generated from husband's business, and not from the sale of timber.[4]  In affirming the commissioner, the trial court said "the evidence supports his determination that [husband] and the witnesses who testified on this point were not credible."

The commissioner and the trial court specifically rejected husband's testimony as to the source of the funds used to purchase this CD.  The commissioner concluded that this CD was marital property, and the trial court affirmed that conclusion.  "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony."  Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (citation omitted).  See also Anderson v. Anderson, 29 Va. App. 673, 684-88, 514 S.E.2d 369, 375-77 (1999) (affirming the trial court's rejection of husband's tracing testimony).

Husband also maintains that he traced CD # 7000956200 to an inheritance from his first wife.  Husband contends that this was separate property.  His children testified that they inherited social security benefits from their mother and that those funds were initially held in separate accounts at Sovran Bank.  They also testified that in June of 1999, the family discussed how to invest that money, and they agreed that husband would use the money to purchase a CD in the name of MMSC.  Husband stated that in September of 2003, he then used those funds to purchase the Cambridge Circle property.

---

[4] The commissioner also stated,

> [a]s to what was done with the timber proceeds, one can only speculate.  However, this all occurred during the time that Husband and his daughters testified Husband was spending a substantial amount of money in preparation for Caroline's wedding.  The timber proceeds, which were cashed and not reported as income on Husband's tax returns, could well have been used for that purpose.  Especially if, as your commissioner has determined, the guns were not sold for that purpose.

Again, however, the evidence in the record does not support his argument. Wife argues that the CD represented marital earnings from MMSC. The commissioner and the trial court rejected husband's testimony and agreed with wife. As the commissioner stated,

> [a]lthough it is impossible to be certain of the origin of these funds, your Commissioner reports that the most persuasive evidence in this regard is that the CD was purchased by Madison Mills Steel Company, and that it was purchased nearly fifteen years after Husband's first wife's death. Husband has provided no documentary proof of the source of these funds as being other than the company's profits; and his explanation that he held his inheritance in the company's general account for the previous fifteen years is not credible. Thus, this CD was also marital property.

As the commissioner found, husband purchased this CD in his company's name, many years after his first wife's death. Husband could not trace the inheritance to the CD to the commissioner's satisfaction. Husband claimed he held the inheritance money in his company's general account for those fifteen years, but the commissioner found that husband's explanation was not credible and concluded that the money used to purchase the CD was income from MMSC. While the commissioner may have speculated as to disposition of the original funds, it is clear that both the commissioner and the trial court found husband failed to meet his burden to trace the proceeds. See Street, 25 Va. App. at 387, 488 S.E.2d at 668; Anderson, 29 Va. App. at 684-88, 514 S.E.2d at 375-77.

Under Code § 20-107.3(A)(3)(a), the income from MMSC, husband's separate property, is marital property only if wife, the non-owning spouse, can prove that the income is attributable to the personal efforts of either party. The parties do not contest that husband operated the business or that husband's personal efforts generated all income of that business.[5] Here, the

---

[5] Personal effort of a party is defined as "labor, effort, inventiveness, physical or intellectual skill, creativity, or managerial, promotional or marketing activity applied directly to the separate property of either party." Code § 20-107.3(A)(3)(a).

- 11 -

commissioner, as affirmed by the trial court, found that income from husband's business funded the CDs in question. Therefore, under Code § 20-107.3(A)(3)(a), the income generated by MMSC was marital property, and the CDs purchased from that income were marital property.

The commissioner rejected husband's evidence of tracing and found that husband purchased the CD with profits from MMSC. The commissioner and the trial court properly concluded that this CD was marital property.

PROPERTY SETTLEMENT AGREEMENT

Husband further contends that the trial court erred in ignoring the express language of the parties' marital agreement by awarding wife a share of husband's separate assets used to purchase real property titled solely in husband's name; i.e., the Cambridge Circle property. This argument is not supported by the trial court's ruling. The trial court did not award wife any part of this separate asset. Rather, the trial court found that husband wasted marital funds to purchase that separate property. The trial court then made those funds part of the marital estate and available for equitable distribution.

On appeal, this Court reviews a trial court's interpretation of a contract *de novo*. Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002). The construction of a marital agreement is subject to the rules of general contract construction. Southerland v. Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995) (applying the general rules of contract construction to property settlement agreements). Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Bridgestone/Firestone v. Prince William Square Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995).

Here, the parties executed an agreement in 1989. The relevant language stated:

> Except as may be modified by paragraphs 1 and 2 above, all real property acquired by either the Husband or Wife, or both of them,

- 12 -

after solemnization of the marriage, shall be owned by the parties as designated in the instrument conveying upon the parties ownership of the said real estate, including all profits and proceeds of the after acquired property.

Husband essentially invites this Court to read the agreement to state that the source of funds used to purchase the separate property should be considered. We decline the invitation to look beyond the plain meaning of the contract language. The trial court never found that the Cambridge Circle property was marital, nor did it award wife a portion of husband's separate property. It simply made wasted marital funds part of the estate for purposes of equitable distribution. The agreement was not breached.

An appellate court will not reverse a trial court's equitable distribution "unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities." von Raab v. von Raab, 26 Va. App. 239, 246, 494 S.E.2d 156, 159 (1997) (quoting Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990)).

In this case, there was no error in the trial court's decision to return to the marital estate marital funds that husband had wasted. The trial court's ruling was consistent with the terms of the marital agreement.

EQUITABLE DISTRIBUTION

Code § 20-107.3(A) requires that the circuit court determine "the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property." The trial court's classification of property as marital or separate is a factual finding. Therefore, that classification will be reversed on appeal only if it is "'plainly wrong or

- 13 -

without evidence to support it.'" Ranney, 45 Va. App. at 31-32, 608 S.E.2d at 492 (quoting McDavid, 19 Va. App. at 407-08, 451 S.E.2d at 715 ).

Marital property is all property titled in the names of both parties and all other property acquired by each party during the marriage which is not separate property, i.e., property received during the marriage by bequest, devise, descent, survivorship or gift from someone other than the spouse. See Code § 20-107.3(A)(2). "All property . . . acquired by either spouse during the marriage, and before the last separation of the parties . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Id. "The party claiming that property should be classified as separate has the burden to produce satisfactory evidence to rebut this presumption." Stroop v. Stroop, 10 Va. App. 611, 615, 394 S.E.2d 861, 863 (1990).

### Wife's American Funds Account and Northwest Mutual Annuity

Husband contends the trial court erred in classifying wife's American Funds Accounts and a Northwest Mutual Annuity as wife's separate property. He challenges the classification of these investment funds because the only evidence of tracing came solely from wife's testimony. In the absence of documentation, he reasons, the trial court had insufficient evidence upon which to base its decision.

Wife acknowledges that the property in question was acquired during the marriage and is presumptively marital. However, she maintains she overcame the presumption with her testimony. We agree with wife.

Husband responds that wife's testimony, alone, does not overcome the presumption. He does not argue that wife's testimony is not credible; he only challenges that wife's testimony is not, by itself, sufficient without supporting documentation.[6]

---

[6] Husband does not challenge that the accounts in question were titled solely in wife's name.

- 14 -

While her testimony was at times confusing and inconsistent, she explained that the accounts were funded with an inheritance that she received from her mother. The commissioner found that her brother's testimony supported wife's position. Husband never rebutted this evidence. Even though wife produced no documentation in support of her testimony, the commissioner believed her testimony and found the evidence sufficient to overcome the marital presumption. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Therefore, the commissioner found wife successfully demonstrated that the American Funds Accounts were her separate property and she overcame the presumption that the accounts were marital property.

The record reveals that the trial court reviewed the commissioner's report and concluded that the evidence supported the commissioner's findings. On appeal, a trial court's decision which approves a commissioner's report will be affirmed unless plainly wrong. Hill, 227 Va. at 576-77, 318 S.E.2d at 296-97. We find no error in the court's acceptance of the commissioner's report.

Wife also testified that her Northwestern Mutual Annuity was purchased with her inheritance of nearly $20,000. Again, the commissioner concluded that her brother's testimony regarding the date and amount of the inheritance corroborated wife's evidence and the commissioner found that the annuity was wife's separate property. Importantly, there was no evidence presented that the funds used to purchase either the American Funds Accounts or the Northwestern Mutual Annuity came from marital assets. Thus, we find the trial court did not err in accepting the commissioner's report and in classifying the Northwest Mutual Annuity as wife's separate property.

<u>Wife's Bank of Virginia Annuity</u>

Husband further contends the trial court erred in finding that the Bank of Virginia Annuity had a zero value when wife's testimony established that it had a balance of $12,607.05 in 1993. However, appellant's question presented asks only whether the trial court erred in classifying the asset as wife's separate property. We are bound by appellant's question presented. <u>See</u> Rule 5A:12(c) ("Only questions presented in the petition for appeal will be noticed by the Court of Appeals."). Thus, we are constrained to review only whether the trial court erred in finding that the Bank of Virginia Annuity was wife's separate property.

The commissioner found that there was no evidence presented from which he could determine whether the Bank of Virginia Annuity still existed or what the value might be. "Without speculation, this item cannot be identified, classified or valued." The trial court accepted this finding, confirming that the annuity was never classified as wife's separate property. Thus, husband is asking this Court to review a ruling the trial court never made. Because the record does not show that the trial court ruled on husband's argument, "there is no ruling for us to review on appeal." <u>Ohree v. Commonwealth</u>, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998); <u>Fisher v. Commonwealth</u>, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993).

<u>Trial Court's Inconsistent Positions Regarding Tracing</u>

Husband's question presented seven asks whether the trial court erred in taking inconsistent positions as to the tracing evidence necessary to establish husband's separate property versus the evidence necessary to establish wife's separate property. Essentially, husband challenges the trial court's finding that he did not meet his burden to show separate property because he did not document his tracing, whereas wife met her burden of tracing without documentation. We find husband has waived this issue on appeal and do not address it.

"Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' Unsupported assertions of error 'do not merit appellate consideration.'" Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)). "[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e) is significant, 'the Court of Appeals may . . . treat a question presented as waived.'" Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008) (quoting Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)).

SPOUSAL SUPPORT

Husband also argues that it was error for the trial court to award wife permanent spousal support in the amount of $1,600 per month.[7]

Spousal support determinations typically involve fact-specific decisions best left in the "sound discretion" of the trial court. McKee v. McKee, 52 Va. App. 482, 489, 664 S.E.2d 505, 509 (2008) (quoting Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999)). A trial court's decision on spousal support will be reversed only if there has been a clear abuse of discretion. Congdon v. Congdon, 40 Va. App. 255, 262, 578 S.E.2d 833, 836 (2003). When we review such discretionary decisions, we will find an abuse of discretion only "when reasonable jurists could not differ." Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006).

When determining an award of spousal support, the circuit court "'must consider all the factors enumerated in Code § 20-107.1(E).'" Fadness, 52 Va. App. at 846, 667 S.E.2d at 863 (quoting Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005)). In addition, the circuit court must "set forth 'findings or conclusions identifying the [Code § 20-107.1(E)] factors

_____

[7] Husband was originally ordered by the commissioner to pay wife $1,000 per month. The trial court increased the award based on modification of the marital estate's equitable distribution.

- 17 -

. . . that support the spousal support award.'" Robinson v. Robinson, 54 Va. App. 87, 91, 675

S.E.2d 873, 875 (2009) (quoting Robinson v. Robinson, 50 Va. App. 189, 196, 648 S.E.2d 314,

317 (2007)).

However, the circuit court is not required to "'quantify or elaborate exactly what weight

or consideration it has given to each of the statutory factors.'" Bruemmer v. Bruemmer, 46

Va. App. 205, 210, 616 S.E.2d 740, 742 (2005) (quoting Miller, 44 Va. App. at 679, 607 S.E.2d

at 128). As long as the circuit court has considered the factors enumerated in Code

§ 20-107.1(E), "'its determination will not be disturbed except for a clear abuse of discretion.'"

Fadness, 52 Va. App. at 845, 667 S.E.2d at 863 (quoting Brooks v. Brooks, 27 Va. App. 314,

317, 498 S.E.2d 461, 463 (1998)).

Here, in determining the amount of spousal support to award wife, the trial court stated

that it had "applied to all of the evidence the factors set forth in Section 20-107.1 of the Code of

Virginia. All such factors were given full consideration by the court." It should also be noted

that the commissioner addressed each statutory factor in detail.

The trial court went on to identify the specific factors supporting its award of spousal

support. These factors included:

> evidence regarding the financial needs of [wife] and the financial
> ability of [husband] to pay support. In particular, the evidence of
> [husband's] comfortable lifestyle, his extensive financial dealings,
> and his spending practices demonstrate that he has ample ability to
> pay spousal support. This evidence is set forth on page 4 and
> pages 7-8 of the Commissioner's report. The other factors in
> subsection (E) that support the court's spousal support ruling are
> those contained in paragraphs 1, 2, 3, 6, 7, 8, and 9 of the statute.

Husband alleges that his income tax returns show gross monthly earnings of only

$3,001.94. However, the commissioner found that husband's tax returns were not an accurate

reflection of his income, concluding that husband earned much more than his evidence revealed.

The commissioner noted that if husband's testimony of his income and expenses was accurate,

husband could not enjoy his current lifestyle and continue a $2,000 per month deficit. Husband had no debts other than current bills. The commissioner further concluded husband claimed many personal expenses as business deductions, referring to husband's accounting practices as "sleight of hand." The trial court confirmed the commissioner's report and factual findings.

Both the commissioner and the trial court considered the income and expenses of husband and wife. The commissioner found wife's reasonable expenses to be approximately $3,500 per month and her wages to be $1,559 per month. After adding approximately $950 in monthly rental income, her total income was approximately $2,500 per month. Wife's spousal support award was originally calculated to be $1,000 per month. This award was later increased to $1,600 per month, because of a modification of the equitable distribution award. See Dukelow v. Dukelow, 2 Va. App. 21, 26, 341 S.E.2d 208, 210-11 (1986) (discussing the trial court has discretion to modify the commissioner's spousal support award if the modification is "reasonable and fair considering the facts and circumstances existing at that time").

Husband contends the trial court did not consider his health problems. However, the record reflects that both the commissioner and the trial court did so. The commissioner acknowledged husband's health issues but concluded husband is able to farm "his substantial acreage primarily by himself" and that he "plays tennis regularly." The commissioner concluded husband appeared to be in good health.

The commissioner rejected husband's expert's testimony that wife could earn $26,000 to $29,000 per year as a full-time title examiner and determined wife's income based on $9 per hour for a forty-hour work week, or approximately $1,559 per month, plus approximately $950 per month from rental income.

We conclude the trial court did not abuse its discretion in awarding wife $1,600 per month in spousal support.

ATTORNEY'S FEES

Attorney's Fees in the Trial Court

Husband contends that trial court erred in awarding wife partial attorney's fees. In support of his argument, he points to the following: 1) wife had considerable financial assets available to her; 2) the lack of any merit to wife's arguments; 3) wife's behavior that led to the dissolution of the marriage; 4) wife's failure to comply with discovery; and 5) wife's role in causing unnecessary delay or expense. Because husband's argument is predicated on facts rejected by the trial court, we find no merit to his argument.

Whether to award attorney's fees "'is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion.'" Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003) (quoting Northcutt v. Northcutt, 39 Va. App. 192, 199-200, 571 S.E.2d 912, 916 (2002)). Given the unique equities of each case, our "appellate review steer[s] clear of inflexible rules and focus[es] instead on 'reasonableness under all the circumstances.'" Id. (quoting Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001)). Factors to be considered include the respective financial positions of the spouses and their degree of fault in precipitating the end of the marriage. See Theismann v. Theismann, 22 Va. App. 557, 574, 471 S.E.2d 809, 817 (holding that husband's "clearly superior financial position" and the fact that his infidelity caused the break-up of the marriage justified an award of attorney's fees to wife), aff'd upon reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996).

In this case, the trial court clearly articulated its reasoning in awarding attorney's fees to wife. As stated in the letter opinion, "It must . . . be emphasized that the Commissioner found that Mr. Davis was dishonest, deceptive, and uncooperative regarding his property, his assets, and his income." The trial court explained that the commissioner concluded that husband's conduct had a "direct impact" on the time and expense of the protracted litigation. The

commissioner articulated that husband "engaged in a pattern of hiding income and profits which pre-dated these divorce proceedings . . . and continued throughout them[]" and the trial court agreed. The trial court underscored that these findings were based upon the commissioner's unique ability to observe witness testimony and demeanor. The record supports these findings.

We find the award of attorney's fees to the wife in the amount of $40,000 was well within the trial court's discretion. First, the evidence in this case showed that the blame for the demise of the marriage fell upon the husband. Second, husband's obstructive behavior made it unreasonably difficult to determine his assets and income producing potential, thereby increasing the cost of litigation. Finally, husband clearly has the ability to pay. Under the circumstances of this case, we hold that the trial court's award of attorney's fees was not an abuse of discretion.

Attorney's Fees on Appeal

Husband asks for an award of attorney's fees and costs to pursue this appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

We reject husband's request, given that he did not prevail on any of nine assertions on appeal and necessarily cannot be a candidate for an award of appellate fees. Brandau v. Brandau, 52 Va. App. 632, 642, 666 S.E.2d 532, 538 (2008); see also Rogers v. Rogers, 51 Va. App. 261, 274, 656 S.E.2d 436, 442 (2008) (denying attorney's fees to non-prevailing party (citing Smith v. Smith, 43 Va. App. 279, 291 n.6, 597 S.E.2d 250, 256 n.6 (2004))).

However, we hold that husband's arguments have no legal merit and wife is entitled to a reasonable amount of attorney's fees expended in this appeal. O'Loughlin, 23 Va. App. at 695, 479 S.E.2d at 100. Accordingly, we remand for an award of attorney's fees incurred in this

appeal, which should also include any additional attorney's fees and costs incurred at the remand hearing.[8]

## CONCLUSION

For the foregoing reasons, we find the trial court properly awarded wife a divorce based upon husband's adultery, properly found husband committed marital waste, did not err in classifying the property, made a proper equitable distribution award, made an appropriate award of spousal support, and properly awarded wife partial attorney's fees. Further, we decline to award husband attorney's fees on appeal, but award wife attorney's fees for this appeal. Accordingly, the trial court is affirmed and this matter is remanded for the reasons stated.

<u>Affirmed and remanded.</u>

---

[8] Wife made a timely request for attorney's fees by motion pursuant to Rule 5A:2. Husband did not respond to wife's motion.